***FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER***

**Electronically Filed
Supreme Court
SCWC-11-0000814
19-JUN-2013
09:56 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

CHONG HUNG HAN, Petitioner/Defendant-Appellant.

SCWC-11-0000814

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-11-0000814; CR. NO. 10-1-1098)

JUNE 19, 2013

RECKTENWALD, C.J., NAKAYAMA, ACOBA, MCKENNA, AND POLLACK, JJ.

OPINION OF THE COURT BY ACOBA, J.

We hold that under State v. Tachibana, 79 Hawai'i 226, 900 P.2d 1293 (1995) and State v. Lewis, 94 Hawai'i 292, 12 P.3d 1233 (2000), a colloquy between the judge and a defendant involves a verbal exchange in which the judge ascertains the defendant's understanding of the defendant's rights. In this case, the advisement by the Family Court of the First Circuit (the court) did not adequately ascertain whether Petitioner/

Defendant-Appellant Chong Hung Han (Petitioner) understood his Constitutional right to testify or not to testify. Further, Petitioner's need for an interpreter during the trial was a "salient fact" heightening the necessity for the court to insure that Petitioner understood the rights that he waived. See State v. Barros, 105 Hawaiʻi 160, 170, 95 P.3d 14, 24 (App. 2004). Under the circumstances, the error in this case was not harmless beyond a reasonable doubt. Accordingly, we vacate the October 30, 2012 judgment of the Intermediate Court of Appeals (ICA) filed pursuant to its September 12, 2012 Summary Disposition Order (2012), vacate the court's October 13, 2011 Amended Judgment of Conviction and Sentence, and remand the case to the court.

I.

On January 26, 2010, Petitioner was charged, via complaint, with the offense of Abuse of Family and Household Members, HRS § 709-906 (Supp. 2006).[1] The Complaint alleged that on January 17, 2010, Petitioner "did intentionally, knowingly, or

---

[1] HRS § 709-906 provides, in relevant part:

(1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4). The police, in investigating any complaint of abuse of a family or household member, upon request, may transport the abused person to a hospital or safe shelter.

For the purposes of this section, "family or household member" means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children; persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit.

2

recklessly physically abuse [his wife,] Kyung Soon Jung [(complainant)], a family or household member[.]"  A jury trial was held over the course of three days, from January 19 to January 21, 2011.  Prior to jury selection and trial, a Korean language interpreter was sworn in before the court to translate the proceedings for Petitioner.

On the first day of trial[2], the following exchange took place between the court and Petitioner:

> THE COURT:  <u>Counsel, before we recess for the day, the court would like to, at this point, advise the defendant of -- of [State v.] Tachibana[, 79 Hawaiʻi 226, 900 P.2d 1293 (1995),] before we -- before we recess for the day, okay.</u>
> All right, [Petitioner], good afternoon -- good afternoon again.  The court, at this point, will take this opportunity to advise you of your rights.
> Okay.  All right.  [Petitioner], you have a constitutional right to testify in your own defense.  You should consult with your lawyer regarding the decision to testify.  However, it is ultimately your decision, and no one can prevent you from testifying should you choose to do so.  If you decide to testify, the prosecutor will be allowed to cross-examine you based on your direct testimony.
> You also have a constitutional right not to testify and to remain silent.  If you choose not to testify, the jury will be instructed that it cannot hold your silence against you in deciding your case.
> If you have not testified by the end of the trial, I will question you to ensure that it was your decision not to testify.  <u>Do you have any questions about what I just explained?</u>
> [PETITIONER]:  <u>(No audible response)</u>
> THE COURT:  Okay, thank you very much.

(Emphases added.)

On the final day of trial, January 21, 2011, Petitioner informed the court that the "[d]efense is going to rest."  The following exchange immediately took place:

> THE COURT:  Oh, okay.  All right.  And so let me take this opportunity, then, to question your client again and -- before we bring in our jury.
> All right, [Petitioner], good morning.  <u>Your attorney</u>

---

[2]     The Honorable Faʻauuga L. Toʻotoʻo presided.

3

> just informed the court that you are not going to testify on your behalf.
>
> [PETITIONER]: (Through the interpreter) Yes.
>
> THE COURT: Okay. All right, remember in the beginning -- beginning of our trial, this court advised you of your rights. And that is, one, you have the right to testify on your behalf, and that -- that decision to testify -- whether to testify or not is your decision alone and that nobody can force you to testify. And then, of course, second, you also have the constitutional right to remain silent and that if you decide to exercise your right to remain silent, the jury will be instruct -- will be instructed not to hold that against you.
>
> Okay. And -- and I trust that you have -- now that the State has finished its case and you had a chance to discuss what happened with your attorney, and based on that discussion, you have decided that you are not going to testify on your behalf. Is anybody threatening or forcing you this morning not to testify?
>
> [PETITIONER]: (Through the interpreter) No.
>
> THE COURT: The decision not to testify is yours and yours alone after you have discussed the matter with your attorney.
>
> [PETITIONER]: (Through the interpreter) Yes.

(Emphasis added.) The trial concluded, and the jury found Petitioner guilty as charged. Petitioner was sentenced to two years probation, fined, and sentenced to serve two days in jail.

## II.

Petitioner appealed to the ICA. On appeal, Petitioner claimed that his right to testify, as set forth in the Hawaiʻi Constitution and the United States Constitution, was violated because the court's Tachibana colloquy was deficient. (Citing Tachibana, 79 Hawaiʻi 226, 900 P.2d 1293.) Petitioner argued that the court "failed to adequately ascertain whether [Petitioner] understood his Tachibana rights." According to Petitioner, the colloquy "significantly differed" from the colloquy cited "with approval" by this court in State v. Christian, 88 Hawaiʻi 407, 967, P.2d 238 (1998), in that the court did not engage in a dialogue with Petitioner after each segment or ensure that Petitioner understood his rights. "Thus,"

4

Petitioner asserted, "[his] waiver of his right to testify was not knowing and voluntary."

Petitioner further argued in his Opening Brief that the court's error was not harmless. He cited to State v. Hoang, 94 Hawaiʻi 271, 12 P.3d 371 (App. 2000), for the proposition that "[i]n general, it is inherently difficult, if not impossible, to define what effect a violation of the defendant's constitutional right to testify had on the outcome of any particular case." Id. at 279, 12 P.3d at 37. As applied to the instant case, Petitioner alleged that the error was not harmless beyond a reasonable doubt, because, "[i]f [Petitioner] had testified, the decisive issue in the instant case would have been credibility, as his version as to what occurred on the night in question would have conflicted with [his wife's] version." "Hence," Petitioner concluded, "[Petitioner's] conviction and sentence must be vacated." (Citing Hoang, 94 Hawaiʻi at 279-80, 12 P.3d at 379-80; Tachibana, 79 Hawaiʻi at 240, 900 P.2d at 1307.)

In its Answering Brief to the ICA, Respondent maintained that (1) the "court conducted a colloquy with [Petitioner] both before trial commenced and before the defense rested at trial, which is plainly consistent with Tachibana []," (citing Tachibana, 79 Hawaiʻi at 240, 900 P.2d at 1307), (2) whether the "right to testify is knowingly, intelligently, and voluntarily waived requires looking at 'the totality of [the] facts and circumstances of each particular case[,]'" (citing Christian, 88 Hawaiʻi at 420, 967 P.2d at 253 (quoting State v.

Merino, 81 Hawai'i 198, 221, 915 P.2d 672, 695 (1996)(internal quotation marks omitted)), and that (3) "Christian did not hold that any portion of the colloquy that was conducted in that case should be replicated in all subsequent cases[.]"  (Citing Christian, 88 Hawai'i 407, 967 P.2d 239.)

According to Respondent, "there is nothing in the record to indicate that the interpreter had difficulty interpreting the [] court's colloquy of [Petitioner], or that [Petitioner] was unable to understand any portion of the court's colloquy with him."  Thus, "by answering either 'yes' or 'no' to the questions asked by [the court, Petitioner] [] clearly indicat[ed] through his answers that he understood the questions . . . ."  The court "clearly asked [Petitioner] whether he had any questions about the colloquy that the court 'just explained' . . . ."  "Although the transcript indicates 'no audible response' in [Petitioner]'s reply [], it is apparent from [the court's] subsequent response of, '[o]kay, thank you very much,' that [Petitioner] did not have any questions with regard to the colloquy. . . ."  Respondent contends then that "based on the totality of the circumstances, the record in this case clearly envinces that [the court] conducted a colloquy that is consistent with Tachibana, . . .  and [Petitioner] knowingly, intentionally, and voluntarily waived his constitutional right to testify."  See Merino, 81 Hawai'i at 220, 915 P.2d at 694.  Therefore, according to Respondent, "there was 'no occasion to apply the doctrine of

6

harmless error.'"  (Citing State v. Lewis, 94 Hawaiʻi 292, 264, 12 P.3d 1233, 1235 (2000) at 264, 12 P.3d at 1235.)

As Petitioner recounts in his Application, the ICA affirmed his conviction, stating the following, inter alia:

> 1. [The court] informed [Petitioner] of his right to testify or not testify before trial commenced and conducted a brief colloquy with [Petitioner] before the defense rested at trial, to ensure that [Petitioner's] decision not to testify was his own[,] see Tachibana, 79 Hawaiʻi at 237 n.9, 900 P.2d at 1304 n.9.
>
> 2. [Petitioner] argues, however, that [the court's] end-of-trial colloquy was inadequate because it was conducted with the assistance of an interpreter, it was relatively brief, and [Petitioner's] responses to the court were simply 'yes' or 'no.'
>
> 3. [T]here is nothing in the record to indicate, that the interpreter had any problem interpreting [the court's] colloquy or that [Petitioner] did not understand the colloquy . . . .
>
> 4. [B]ased on the totality of the circumstances, . . . [Petitioner's] waiver of his constitutional right to testify was done knowingly, intelligently, and voluntarily.

(Citing State v. Chong Hung Han, No. CAAP-11-0000814, 2012 WL 4009906, at *2-3 (App. Sept. 12, 2012)(SDO).)

III.

In his Application Petitioner maintains that "[t]he ICA gravely erred in holding that [Petitioner] made a knowing, intelligent, and voluntary waiver of the right to testify at trial because the ICA erroneously concluded that [Petitioner] understood his constitutional rights."  Respondent did not file a response.

IV.

It is established that "'[a] defendant's right to testify in his or her own defense is guaranteed by the constitutions of the United States and Hawaiʻi and by a Hawaiʻi

7

Statute.[3]'" Tachibana, 79 Hawai'i at 231, 900 P.2d at 1298

(quoting State v. Silva, 78 Hawai'i 115, 122-23, 890 P.2d 702,

709-10 (App. 1995))(brackets omitted).  Three separate amendments

of the United States Constitution guarantee such a right.

Tachibana, 79 Hawai'i at 231, 900 P.2d at 1298.

> "It is guaranteed by the due process clause of the
> fourteenth amendment as essential to due process of law in a
> fair adversary process. . .
>
> The right to testify is also guaranteed to state defendants
> by the compulsory process clause of the sixth amendment as
> applied through the fourteenth amendment. . .
>
> Lastly, the opportunity to testify is also a necessary
> corollary to the Fifth Amendment's guarantee against
> compelled testimony, since every criminal defendant is
> privileged to testify in his [or her] own defense, or to
> refuse to do so."

Id. (quoting Silva, 78 Hawai'i at 122-23, 890 P.2d at 709-10).

The Hawai'i Constitution also guarantees the right to testify in

the provisions that parallel the fourteenth, fifth, and sixth

amendments to the United States Constitution.  See id.; Haw.

Const. art. I, §§ 5, 14, and 10.

In Tachibana, this court first considered what

procedures would best protect criminal defendants' exercise of

their right to testify.  Id. at 233-38, 900 P.2d at 1300-05.

After reviewing the three primary approaches that other

jurisdictions had taken in cases where defendants had claimed

---

3    HRS § 801-2 (1993) states:

In the trial of any person on the charge of any offense, he
[or she] shall have a right. . . to be heard in his [or her]
own defense.

that their attorneys deprived them of their right to testify,[4] this court concluded that requiring trial courts to conduct an on-the-record discussion with the defendant was the best approach. Id. The risk that "'by advising the defendant of his [or her] right to testify, the court could influence the defendant to waive his [or her] right not to testify, thus threatening the exercise of this other, converse, constitutionally explicit and more fragile right[,]'" was recognized. Id. at 235, 900 P.2d at 1303 (quoting United States v. Martinez, 883 F.2d 750, 760 (9th Cir. 1989)) (brackets and emphases in original). However, this court also observed that

> "[a]lthough trial judges would be required to advise defendants who do not testify, the burden would be relatively minimal. Indeed, by engaging in the colloquy, a trial judge would establish a record that would effectively settle the right-to-testify issues in the case, and thereby relieve the trial judge of extended post-conviction proceedings."

Id. (quoting Boyd, 586 A.2d at 679-80) (emphasis added). Thus, it was held that "in order to protect the right to testify under the Hawai'i Constitution,[] trial courts must advise criminal defendants of their right to testify and must obtain an on-the-

---

[4]  The Tachibana court first rejected the "demand rule" which would have required that "'a defendant who fails to complain about the right to testify during trial is conclusively presumed to have waived that right.'" 79 Hawai'i at 233, 900 P.2d at 1301 (quoting Boyd v. United States, 586 A.2d 670 (D.C.App. 1991)). The court then decided between the remaining two approaches. Id. at 234, 900 P.3d at 1301. One approach was the "colloquy procedure[,]" which it adopted. 79 Hawai'i at 234, 900 P.2d at 1301. The remaining approach was the post-conviction challenge approach, in which "'a trial judge need not sua sponte question the defendant during the trial, but the defendant is free to bring a post-conviction challenge based on a denial of the right to testify. To prevail in such a challenge, the defendant must demonstrate that he or she did not knowingly waive the right to testify at trial.'" Id. (quoting Boyd, 586 A.2d at 675-677.)

9

record waiver of that right in every case in which the defendant does not testify." Id. at 1303.

Tachibana also discussed when such a colloquy must take place, concluding that "the ideal time to conduct the colloquy is immediately prior to the close of the defendant's case." Id. at 237. Further, Tachibana indicated how the colloquy must be conducted. Id. at 236 n.7, 900 P.2d at 1303 n.7. It stated,

> In conducting the colloquy, the trial court must be careful not to influence the defendant's decision whether or not to testify and should limit the colloquy to advising the defendant
> "[(1)] that he or she has a right to testify, [(2)] that if he or she wants to testify that no one can prevent him or her from doing so, and [(3)] that if he or she testifies the prosecution will be allowed to cross examine him or her. In connection with the privilege against self-incrimination, the defendant should also be advised that [(4)] he or she has a right not to testify and [(5)] that if he or she does not testify then the jury can be instructed about that right."

Id. (quoting State v. Neuman, 179 W.Va. 580, 585 (1988))(brackets and citation omitted).

This court's subsequent opinion in Lewis further clarified the requirements of when and how a court must conduct the colloquy. First, Lewis incorporated the colloquy requirements that were set forth in footnote 7 of Tachibana, quoted supra, into the text of the opinion, when it described how a trial court must engage a defendant. Lewis, 94 Hawai'i at 293-94, 12 P.3d at 1234-35. Second, in recognizing that the Tachibana colloquy was the "product of two objectives: (1) the protection of a defendant's personal right to testify; and (2) the minimization of post-conviction disputes over the actual waiver of the right to testify[,]" id. at 295, 12 P.3d at 1236,

10

Lewis held that a trial court need not engage in a Tachibana colloquy except where the defendant has indicated that he or she will not testify. Id. at 296-97, 12 P.3d at 1237-38. This court also stated, however, that "we believe there is a salutary effect to be obtained in all cases from a trial court addressing a defendant [at the start of trial]," and thus this court held that "we now mandate that . . . such advice shall be imparted by the trial court to defendants . . . . prior to the start of trial[.]" Id.

Therefore, Lewis (1) reiterated the requirements set out in footnote 7 of Tachibana regarding how the trial court must advise the defendant, id. at 294-95, 12 P.3d at 1234-35, (2) required that a colloquy regarding defendant's right to testify or not to testify be conducted at the start of trial in all cases, id. at 296, 12 P.3d at 1237, and (3) stated that the "ultimate colloquy," the one described in Tachibana, must be given in all cases, except where the defendant has indicated that he or she does intend to testify, id. at 296, 12 P.3d at 1237.

V.

In the instant case, Petitioner contends that his waiver of the constitutional right to testify in his defense was not knowing, intelligent, and voluntary. This court has held that "to determine whether a waiver [of a fundamental right] was voluntarily and intelligently undertaken, this court will look to the totality of the facts and circumstances of each particular case." State v. Friedman, 93 Hawai'i 63, 66-67, 996 P.2d 268,

11

273-74 (2000) (internal quotation marks and citations omitted); see also Christian, 88 Hawaiʻi at 420, 967 P.2d at 252 (applying the "totality of the facts and circumstances" test to determine whether the defendant's waiver of his right to testify in his own defense was knowing, intelligent, and voluntary). Based on the transcripts of the court's proceedings in this case, taken as a whole, it appears that the defendant did not knowingly, intelligently, and voluntarily waive his constitutional right to testify.

VI.

In this case, two advisements took place regarding the defendant's right to testify, one before trial began, in accordance with Lewis, 94 Hawaiʻi at 297, 12 P.3d at 1238, and one at the close of the defendant's case, as required by Tachibana, 79 Hawaiʻi at 236, 900 P.2d at 1303. With respect to the first advisement, Lewis requires that "'prior to the start of trial,'" the court shall "'(1) inform the defendant of his or her personal right to testify or not to testify and (2) alert the defendant that, if he or she has not testified by the end of the trial, the court will briefly question him or her to ensure that the decision not to testify is the defendant's own decision.'" 94 Hawaiʻi at 297, 12 P.3d at 1238 (quoting Tachibana, 79 Hawaiʻi at 237 n.9, 900 P.2d at 1304 n.9). Petitioner challenges the first pre-trial colloquy on the ground that the court did not obtain

from the defendant an audible indication that he understood his rights.

As indicated supra, before the start of trial, the court advised Petitioner of his "constitutional right to testify in his own defense." To reiterate, at the end of his pre-trial advisement, the judge asked Petitioner if he had any questions about what the judge had explained, but it was noted on the trial transcript that Petitioner's response was inaudible.

There is no requirement for this first advisement that a court obtain an on-the-record waiver of the defendant's right to testify. However, Lewis implemented the pre-trial advisement requirement with the intent that it would "have the beneficial effect of limiting any post-conviction claims that a defendant testified in ignorance of his or her right not to testify." 94 Hawaiʻi at 297, 12 P.3d 1238. It is thus important that the defendant actually have an understanding of what the court articulates in its pre-trial advisement.

In this case, there was no audible response by Petitioner to the court's inquiry as to whether Petitioner had any questions about the rights that the court explained. Contrary to Respondent's assertion that the court's "[o]kay, thank you very much," indicates acquiescence on the part of Petitioner, it cannot be inferred exactly what was said because Petitioner's response was inaudible. Therefore, even though an on-the-record waiver is not required, the fact that it is not known whether Petitioner was able to understand the court's

13

advisement is problematic inasmuch as appellate review of the adequacy of the advisement is precluded.

On appeal, the pre-trial advisement is reviewed for "actual prejudice." Lewis, 94 Hawaiʻi at 297, 12 P.3d at 1238 ("Because we view this prior-to-trial advisement as incidental to the 'ultimate colloquy' [], any claim of prejudice resulting from the failure of the trial court to give it must meet the same 'actual[] prejudice[]' standard applied to violations of the colloquy requirement.") In holding that the failure to properly conduct the Tachibana colloquy was harmful error, infra, the issue of whether Petitioner could demonstrate "actual prejudice" with respect to the pre-trial colloquy need not be addressed here.

VII.

Petitioner also challenges the second colloquy, the Tachibana colloquy given at the close of his case, on two different grounds. First, he alleges that the court failed to adequately ascertain whether Petitioner understood his Tachibana rights. Second, he contends that because he needed a Korean language interpreter, the court's failure to inquire into whether he understood the advisement was even "more egregious."

Pursuant to Tachibana, this second colloquy is considered to be the "ultimate colloquy," 79 Hawaiʻi at 237 n.9, 900 P.2d 1304 n.9, and while Lewis held that this colloquy was not required where the defendant had decided to testify, 94 Hawaiʻi at 296-97, 12 P.3d at 1237-38, in this case such an

14

exchange was necessary, because Petitioner's attorney had indicated that Petitioner would not be testifying. In this case, to reiterate, the transcript indicates that the following exchange took place at the close of Petitioner's case:

> THE COURT: Oh, okay. All right. And so let me take this opportunity, then, to question your client again and -- before we bring in our jury.
> All right, [Petitioner], good morning. Your attorney just informed the court that <u>you are not going to testify on your behalf.</u>
> [PETITIONER]: (Through the interpreter) Yes.
> THE COURT: Okay. All right, remember in the beginning -- beginning of our trial, this court advised you of your rights. And that is, <u>one, you have the right to testify on your behalf, and that -- that decision to testify -- whether to testify or not is your decision alone and that nobody can force you to testify. And then, of course, second, you also have the constitutional right to remain silent and that if you decide to exercise your right to remain silent, the jury will be instruct -- will be instructed not to hold that against you.</u>
> Okay. And -- and I trust that you have -- now that the State has finished its case and you had a chance to discuss what happened with your attorney, and based on that discussion, you have decided that you are not going to testify on your behalf. <u>Is anybody threatening or forcing you this morning not to testify?</u>
> [PETITIONER]: <u>(Through the interpreter) No.</u>
> THE COURT: <u>The decision not to testify is yours and yours alone after you have discussed the matter with your attorney.</u>
> [PETITIONER]: <u>(Through the interpreter) Yes.</u>

(Emphases added.)

### A.

First, the court failed to ascertain whether Petitioner understood his right to testify. As mentioned, following <u>Tachibana</u>, "in order to protect the right to testify under the Hawaiʻi Constitution, trial courts must advise criminal defendants of their right to testify and must obtain a waiver of that right in every case in which the defendant does testify." 79 Hawaiʻi at 236, 900 P.2d at 1303. <u>Tachibana</u> characterized such an exchange

15

as a "colloquy." Id. at 237, 900 P.2d at 1304. "Colloquy" is defined as "[a]ny formal discussion, such as an oral exchange between a judge, the prosecutor, the defense counsel, and a criminal defendant in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights." Black's Law Dictionary 300 (9th ed. 2009) (emphases added).

In this case, the transcript does not indicate that a true "colloquy" took place. Instead, the court simply advised Petitioner of his rights, without any "discussion," "exchange" or ascertainment that Petitioner understood his rights. See id. Respectfully, at least twice during the colloquy, the court should have engaged in a verbal exchange with Petitioner to ascertain Petitioner's understanding of significant propositions in the advisement.

The first time the court should have requested a response was after it stated, "you also have the constitutional right to remain silent, and that if you decide to exercise your right to remain silent, the jury . . . will be instructed not to hold that against you." The court did not obtain an affirmative or negative response from Petitioner as to his understanding of these principles, but simply continued on with the advisement.

The second time the court should have requested a response was following its statement that "[a]nd -- and I trust that you have -- now that the State has finished its case and you had a chance to discuss what happened with your attorney, and

16

based on that discussion, you have decided that you are not going to testify on your behalf." Again, the court did not engage Petitioner in any acknowledgment of his understanding of these propositions. Instead of asking for Petitioner's response to these important matters, the court singled out one factor for a response, inquiring "[i]s anybody threatening or forcing you this morning not to testify?", to which Petitioner responded, through his interpreter, "No." It is not evident why the court chose this particular issue as one deserving of a response, but did not inquire into other matters of constitutional magnitude.

Under the circumstances, the court did not adequately establish, on-the-record, that Petitioner understood what rights he was waiving when he agreed that his decision not to testify was his alone. Nothing in the record indicates that in making that decision for himself, Petitioner had in fact understood the rights listed by the court and to which the court did not obtain responses.

Moreover, Petitioner's two responses to the court during this colloquy do not indicate that Petitioner understood that he <u>had</u> the right <u>to testify</u>. Regarding the first question, "[i]s anybody threatening or forcing you this morning <u>not</u> to testify?", (emphasis added), Petitioner's response of "No" does not indicate that he understood that he had a constitutional right to testify, only that no one was <u>forcing</u> him <u>not</u> to do so. Moreover, although Petitioner responded "[y]es" to the court's

17

statement that "[t]he decision not to testify is yours and yours alone after you have discussed the matter with your attorney[,]" it is not clear that the defendant was responding "yes" that he understood that the decision was his alone, or "yes[,]" he had discussed the matter with his attorney.[5]

The failure to ensure that Petitioner understood his rights amounts to a failure to obtain the on-the-record waiver required by Tachibana. In Tachibana, this court declared that one of its reasons for adopting such a requirement was so "a trial judge would establish a record that would effectively settle the right-to-testify issues in the case, and thereby relieve the trial judge of extended post-conviction proceedings." 79 Hawaiʻi at 234-35, 900 P.2d at 1302-03 (quoting Boyd, 586 A.2d at 679-80) (emphasis added). The colloquy in the instant case by no means produced a record that would "settle the right-to-testify issues." Id. Respectfully, the colloquy does not establish any confidence that the defendant understood each of his rights, and that the court had an objective basis for finding that Petitioner knowingly, intelligently, and voluntarily gave up those rights.[6]

---

[5]  The Hawaii Criminal Benchbook also sets forth the Tachibana requirements.

[6]  By contrast, in Christian, the court administered the colloquy as follows:

> THE COURT:  As I have discussed with you before the start of the trial, you do have the constitutional right to testify in your own defense, You understand?
> THE DEFENDANT:  Yes.

B.

Next, Petitioner's observation that the court's error in failing to ensure his understanding was "more egregious" because of the need for an interpreter is accurate.  The language barrier in this case was a "salient fact" that impacted Petitioner's ability to understand the rights that he waived.  See Barros, 105 Hawaiʻi at 170, 95 P.3d at 24.

In determining how language barriers can affect the waiver of constitutional rights, case law regarding the waiver of the right to a trial by jury, see U.S. Const. amend XI; Haw. Const. art. 1, § 14, is instructive.  In United States v. Duarte-Higareda, the Ninth Circuit considered whether a defendant had knowingly and intelligently waived his Constitutional right to a jury trial.  113 F.3d 1000, 1002 (9th Cir. 1997).  That court

---

THE COURT:  And although you should consult with [], your lawyer regarding your decision to testify, it is your decision and no one can prevent you from testifying if you chose to do so . . . Do you understand?
THE DEFENDANT:  Yes.
THE COURT:  And if you decide to testify, the prosecutor will be allowed to cross-examine you.  You understand that?
THE DEFENDANT:  Yes.
THE COURT:  You also have the constitutional right not to testify and to remain silent.  You understand?
THE DEFENDANT:  I understand.
THE COURT:  And you understand that if you chose not to testify, that the jury will be instructed that it can not hold your silence against you in deciding your case.
THE DEFENDANT:  I understand.
THE COURT:  It's the understanding of the Court that you do not intend to testify in this case, is that correct?
THE DEFENDANT:  That's correct.
THE COURT:  And that's your decision.
THE DEFENDANT:  Yes.

88 Hawaiʻi at 414-15, 967 P.2d at 246-47 (emphases added).

noted that "the district court should question the defendant to ascertain whether the defendant understands the benefits and burdens of a jury trial and freely chooses to waive a jury."  Id. (citing United States v. Cochran, 770 F.2d 850, 853 (9th Cir. 1985)).

The defendant had used a Spanish language interpreter throughout the proceedings, but signed a written jury waiver form that was written entirely in English.  Id. at 1003.  Under these circumstances, Duarte-Higareda held that "[the defendant's] language barrier, like [] mental illness, is a salient fact that was known to the district court and put the court on notice that [the defendant's] waiver might be less than knowing and intelligent[.]"  Id. (emphasis added) (citation and internal quotation marks omitted).  The Ninth Circuit thus held that the language barrier triggered an additional reason for the district court to engage in a colloquy with the defendant "to carry out its 'serious and weighty responsibility' of ensuring that a defendant's jury waiver is voluntary, knowing, and intelligent." Id. (quoting United States v. Christensen, 18 F.3d 822, 826 (9th Cir. 1994)).

This court has acknowledged this "salient fact" requirement in Friedman, where it addressed whether or not the defendant's waiver of a jury trial was voluntary, knowing and intelligent. 93 Hawaiʻi at 70, 996 P.2d at 275 ("[The defendant] has failed to direct us to any 'salient fact' bearing upon his

20

ability to understand his jury waiver that would have created the need for an extensive colloquy by the trial court . . . [.]"); see also Barros, 105 Hawaiʻi at 169, 95 P.3d at 23; State v. Mitchell, 94 Hawaiʻi 388, 395, 15 P.3d 314, 321 (App. 2000). While Friedman is not controlling in terms of addressing a defendant's waiver of his or her right to testify, the rationale in Friedman highlights the necessity of ensuring that a trial court's procedures are designed to adequately protect vulnerable defendants.

The presence of a "salient fact" underscores the importance of the court's colloquy as a procedural safeguard that protects a defendant's right to testify or to not testify. "Salient facts," such as mental illness or language barriers, require that a court effectively engage the defendant in a dialogue that will effectuate the rationale behind the colloquy and the on-the-record waiver requirements as set forth in Tachibana. See 79 Hawaiʻi at 325, 900 P.2d at 1302.

In Duarte-Higareda, the language barrier was a concern with regard to filling out the jury waiver form that was in English. 770 F.2d at 1003. Here, a number of complex concepts addressing Petitioner's constitutional rights were articulated by the court and then apparently translated for Petitioner.[7] With

_____

[7] The record reflects that the defendant had a Korean language interpreter and that the discussion occurred "[t]hrough the interpreter[.]"

21

respect to a waiver of the right to testify, <u>Tachibana</u> and <u>Lewis</u> require a colloquy in all cases where defendant is not testifying, <u>see</u> <u>Lewis</u>, 94 Hawaiʻi at 297, 12 P.3d at 1238, so whether or not a colloquy should have been conducted is not at issue in this case. However, as in <u>Duarte-Higareda</u>, a language barrier was present, and thus there was a "salient fact" that made the Petitioner's understanding of the colloquy critical.

In these circumstances, the court was duty bound under <u>Tachibana</u> to inquire into Petitioner's understanding of the rights that the court articulated. The language barrier that triggered the colloquy requirement in <u>Duarte-Higareda</u>, 770 F.2d at 1003, and, by analogy, the language barrier in this case, implicate the importance of proper questioning to confirm that the Petitioner understood each of his rights with respect to his decision not to testify.

VIII.

Taken together, the errors by the court in the instant case demonstrate that Petitioner's waiver of the right to testify was not made knowingly, intelligently, and voluntarily. <u>See</u> <u>Christian</u>, 88 Hawaiʻi at 420, 967 P.2d at 252. With respect to the <u>Tachibana</u> colloquy at the close of defendant's case, first, the court did not ask Petitioner for appropriate responses to ensure that Petitioner understood the rights articulated, and second, the risk that Petitioner did not understand was exacerbated by the fact that Petitioner needed an interpreter

22

during the proceedings. Accordingly, a review of the court's interactions with Petitioner with respect to the constitutional right to testify establishes that the court did not obtain a valid on-the-record waiver of Petitioner's right to testify.[8]

IX.

With respect to the Tachibana colloquy at the close of Petitioner's case, first, the court did not ask Petitioner for appropriate responses to ensure that Petitioner understood the rights articulated, and second, the risk that Petitioner did not understand was exacerbated by the fact that Petitioner needed an interpreter during the proceedings. Taken together, the errors by the court in the instant case demonstrate that Petitioner's

---

[8] In addition, because the case is remanded, we note that in the Tachibana colloquy, two of the advisements may have been confusing and one of the required advisements was omitted altogether.

First, the court must indicate to a defendant that no one can prevent him or her from testifying. Id. However, here, the court stated, "whether to testify or not is your decision alone and [] nobody can force you to testify." At the end of the colloquy, the court then asked Petitioner, "[i]s anybody threatening or forcing you this morning not to testify?" The court's questions indicated coercion was involved, but, to the contrary, "preventing" need not involve threats or force.

Second, the court should tell a defendant "that if he or she testifies, the prosecution will be allowed to cross examine him or her." Tachibana, 79 Hawaiʻi at 236 n.7, 900 P.2d at 1303 n.7 (brackets and citations omitted). Here, the court did not advise Petitioner of this at all during the Tachibana colloquy. Although Petitioner's counsel had indicated that Petitioner did not intend to testify, it was still critical that the court inform Petitioner that if he did testify, the prosecutor could cross-examine him, inasmuch as Petitioner could change his mind and decide to testify.

Finally, the court should advise a defendant that he or she has the right not to testify. Tachibana, 79 Hawaiʻi at 235, 900 P.2d at 1303. Here, the court told Petitioner that he had "the constitutional right to remain silent[,]" and said nothing about the right not to testify. However, for a defendant, "remaining silent" could mean something other than "not testifying," since the phrase "right to remain silent" popularly invokes the familiar Miranda warnings. As Chief Justice Rehnquist noted in his opinion in Dickerson v. United States, "Miranda has become embedded in routine police practice to a point where the warnings have become part of our national culture." 530 U.S. 428, 430 (2000). A defendant could be confused if a court states simply, "you have the right to remain silent" without using the accompanying phrase, "you have the right not to testify."

waiver of the right to testify was not made knowingly, intelligently, and voluntarily. See Christian, 88 Hawaiʻi at 420, 967 P.2d at 252. Accordingly, a review of the court's interactions with Petitioner with respect to the constitutional right to testify establishes that the court did not obtain a valid on-the-record waiver of Petitioner's right to testify.

Additionally, we note advisedly for purposes of remand, that the court misstated two portions of the Tachibana colloquy and omitted a third portion entirely.

X.

Respondent does not make any arguments with respect to harmless error, except to state that, "there is no error here, and thus 'no occasion to apply the doctrine of harmless error.'" (Quoting Lewis, 94 Hawaiʻi at 264, 12 P.3d at 1235.) However, "[o]nce a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt." Tachibana, 79 Hawaiʻi at 240, 900 P.2d at 1307 (citing Silva, 78 Hawaiʻi at 125, 890 P.2d at 712). In this case, Respondent has not attempted to prove the violation was harmless beyond a reasonable doubt.

"The relevant question under the harmless beyond a reasonable doubt standard is 'whether there is a reasonable possibility that error might have contributed to conviction.'" State v. Schnabel, 127 Hawaiʻi 432, 450, 279 P.3d 1237, 1255

24

(quoting State v. Duncan, 101 Hawaiʻi 269, 278, 67 P.3d 768, 777 (2003)) (emphases in original).  As stated, the ICA observed in Hoang that, "it is inherently difficult, if not impossible, to divine what effect a violation of the defendant's constitutional right to testify had on the outcome of any particular case," 94 Hawaiʻi at 379, 12 P.3d at 379 (citing Silva, 78 Hawaiʻi at 126, 890 P.2d at 713), and thus the burden rests on the State to establish "the violation was harmless beyond a reasonable doubt." Tachibana, 79 Hawaiʻi at 240, 990 P.2d at 1307.

The jury in the instant case heard testimony from complainant, who testified as to the incident, and Honolulu Police Officer Kelly Crail (Crail), who responded to the scene of the alleged incident.  During his cross-examination of complainant,[9] and the cross-examination of Crail,[10] Petitioner's

---

[9]    The following excerpts, inter alia, from the cross-examination of complainant support Petitioner's theory of the case:

> [Counsel for Petitioner]:  So you went to Straub [clinic] with these two people from the church, right?
> [Complainant]:  That's correct.
> [Counsel for Petitioner]:  And you told them what happened?
> [Complainant]:  Yes.
> . . . .
> [Counsel for Petitioner]:  So they didn't find that -- your breathing was normal, and your breath sounds normal, and you had no respiratory distress?
> [Complainant]:  Yes, they say nothing wrong.
> . . . .
> [Counsel for Petitioner]: [] So at Straub [clinic], they did some tests on you, yeah, x-ray?
> [Complainant]:  Yes.
> [Counsel for Petitioner]:  They found no fracture?
> [Complainant]:  Yeah, that's right.

[10]    The following excerpts, inter alia, from the cross-examination of Crail support Petitioner's theory of the case:

counsel attempted to call into question whether complainant was actually injured as a result of the events that took place on January 17, 2010.  Thus, the theory of Petitioner's defense at trial appears to have been that complainant's testimony was not credible, in other words, that she was lying about the alleged incident.

In closing argument, Petitioner's counsel argued, inter alia, that (1) "the physical evidence [didn't] match" the complaint's version of events,[11] (2) that complainant "exaggerated" her account and was "not credible[,]"[12] (3) that the only account of the incident that Respondent presented was complainant's account, which again, was not corroborated by the

---

[Counsel for Petitioner]:  If she hadn't been able to walk around because of pain, that certainly would have gone in your report, correct?
[Crail]:  Yes.
[Counsel for Petitioner]:  Do you recall ever seeing her walk at all that night? Was she moving and standing at all?
[Crail]:  Yes.
. . . .
[Counsel for Petitioner]:  Did you see her walk with a limp, dragging her back foot?
[Crail]:  No.
[Counsel for Petitioner]:  Something like that, you certainly would have noticed, and probably the EMS person would have noticed, everybody would have noticed, right?
[Crail]:  Yes.

[11]    Counsel for Petitioner stated, "[p]hysical evidence doesn't lie. The physical evidence doesn't match, and when the physical evidence doesn't match, you have a reasonable doubt as to whether things happened the way [complainant] said."

[12]    Counsel for Petitioner stated, "[s]o [complainant] exaggerated. And what does the law say about exaggerating?  You can use that to see if you find the witness credible.  She's not credible."

physical evidence,[13] (4) that the jury cannot know, based only on complainant's account, what actually occurred on the date of the incident,[14] and (5) that complainant's "stories conflict," which could create questions in the minds of the jurors, and therefore reasonable doubt.[15]  As a result, based on the cross-examination of Respondent's witnesses and the closing argument, the case would have rested on the credibility of the witnesses.

As Petitioner noted before, "[i]f [Petitioner] had testified, the decisive issue in the instant case would have been credibility, as his version as to what occurred on the night in question would have conflicted with [complainant's] version."

---

[13] Counsel for Petitioner stated,

And if you have a doubt about that -- because it's just [complainant's] word.  There's no other witnesses.  There's no video of something happening.  There's no neighbor who even heard shouting.  There's no other testimony.  That's all [Respondent's] introduced, is her word that this happened.  And you look at the physical evidence, which doesn't lie, it can't lie, and has no reason to lie, has nothing to gain from -- by lying, and it doesn't match what she said.

[14] Counsel for Petitioner stated:

[Complainant] came in, and she lied, and she exaggerated.  And you don't know what really happened that night.  You don't know if [Petitioner] hit her.  You don't know if he was even there.  You don't know if she just whacked herself in the face enough to get it red and show an old bruise or a new bruise, rammed herself against the counter.  Who knows, okay?  Who knows?

[15] Finally, counsel for Petitioner stated:

[Complainant's] stories conflict.  You're allowed to question her credibility.  You may have a question about her credibility.  And she's the only eyewitness.  If you have questions about your decision.  When you have questions, that means you have a doubt.  When you have just one, single reasonable doubt -- doesn't have to be the same as everybody else -- you have to vote not guilty.

Thus, in this case, as in <u>Tachibana</u> and <u>Silva</u>, it would be "'impossible to conclude, beyond a reasonable doubt,'" that Petitioner's testimony, "'could not have created a reasonable doubt in the mind of the factfinder and, hence, that the error could not have contributed to the conviction.'" <u>Tachibana</u>, 79 Hawaiʻi at 240, 900 P.2d at 1307 (quoting <u>Silva</u>, 78 Hawaiʻi at 126, 890 P.2d at 713). Thus, the court's error in failing to obtain an knowing, intelligent, and voluntary waiver of Petitioner's right to testify was not harmless.

XI.

Based on the foregoing, we vacate the ICA's October 30, 2012 judgment and the court's October 13, 2011 Amended Judgment of Conviction and Sentence, and remand the case to the court for proceedings not inconsistent with this opinion.

Evan S. Tokunaga,
for petitioner

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Simeon R. Acoba, Jr.

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

