***NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS AND PACIFIC REPORTER***

Electronically Filed
Supreme Court
SCWC-13-0000396
15-JUN-2017
08:16 AM

SCWC-13-0000396

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

DEIRDRE ICHIMURA, Petitioner/Defendant-Appellant.

---

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0000396; CR. NO. 12-1-1497)

MEMORANDUM OPINION
(By: Recktenwald, C.J., Nakayama, McKenna, Pollack, and Wilson, JJ.)

Deirdre Ichimura (Ichimura or defendant) was charged with assaulting a law enforcement officer. The incident occurred when the officer was attempting to arrest Ichimura pursuant to an arrest warrant. Ichimura was tried before a jury and did not testify at trial.[1] The jury found her guilty.

---

[1] The Honorable Patrick W. Border presided.

On appeal to the Intermediate Court of Appeals (ICA), Ichimura argued that the trial court abused its discretion when it permitted a police officer to testify that Ichimura appeared to be "more on drugs than under a mental illness" at the time of the incident, and that he believed that the court who issued Ichimura's arrest warrant "would have been made aware if [Ichimura] had a mental illness." The ICA affirmed Ichimura's conviction, and she sought review in this court.

We conclude that the circuit court erred in admitting the police officer's statements. We also conclude that the circuit court erred in failing to conduct a proper colloquy regarding Ichimura's right to testify as required by State v. Tachibana, 79 Hawaiʻi 226, 900 P.2d 1293 (1995). Accordingly, we vacate the ICA's Judgment on Appeal and the circuit court's Judgment of Conviction and Sentence, and remand to the circuit court for further proceedings consistent with this opinion.

## I. Background

### A. Circuit Court Proceedings

Ichimura was charged by complaint with Assault Against a Law Enforcement Officer in the Second Degree, in violation of

HRS § 707-712.6 (Supp. 2012).[2]  The complaint alleged that on December 30, 2011, Ichimura "did recklessly cause bodily injury to Vincent Gonzales, a law enforcement officer who was engaged in the performance of duty[.]"

## 1. Trial

Prior to the beginning of trial, the court conducted a colloquy with Ichimura:

> THE COURT: I want to briefly address, if I might, Ms. Ichimura.
> I want you to know that you have a Constitutional right to testify in your own defense. You should consult with your lawyer regarding the decision to testify because, of course, he's a good strategist and he has access to other people who are also good strategists.  So it's a decision that's made with care, but it's your decision; and if you decide that you want to testify, no one can prevent you from testifying, if it's your decision.
> So you also have the Constitutional right not to testify and to remain silent.
> Oh, I should point out, if you do testify, of course, after your attorney is finished questioning you, then the State's attorney would also have the opportunity to cross-examine you.  Of course, the prosecutor's function is to undercut witnesses' testimony, so you could assume that that would be probably not -- not friendly questioning in contrast

---

[2]     HRS § 707-712.6 provides:

(1) A person commits the offense of assault against a law enforcement officer in the second degree if the person recklessly causes bodily injury to a law enforcement officer who is engaged in the performance of duty.

(2) Assault of a law enforcement officer in the second degree is a misdemeanor.  The court shall sentence the person who has been convicted of this offense to a definite term of imprisonment, pursuant to section 706-663, of not less than thirty days without possibility of probation or suspension of sentence.

> to your own attorney's questioning.
>       You also have the Constitutional right not to testify and to remain silent, and that's your decision.  If you choose not to testify, I will specifically inform the jury that it may not hold your decision against you, that it cannot hold your silence against you in deciding your case or even considering that as one factor.  They have to ignore it altogether.
>       If you have not testified by the end of the trial I will briefly question you to make sure that it is your decision not to testify.  You don't have to decide anything right now.  The State can put on its whole case and -- so you have time to make that decision.
>       But do you understand all that I've described, that these decisions to testify or not to testify are your decisions?
>
> [ICHIMURA]: (No audible response.)
>
> THE COURT: All right.  Very good.

During opening statements, the Deputy Prosecuting Attorney (DPA) told the jury that they would hear testimony from police officers about responding to the scene of a reported purse theft, and encountering Ichimura.  The DPA further said that the officers would testify about Ichimura's erratic behavior, her refusal to respond to the officers' commands, and that she kicked Officer Gonzales in the knee and groin area.

Defense counsel's opening statement began by explaining that Ichimura is a diagnosed schizophrenic, and that her way of interacting with people "is not the typical way you or I might interact with somebody.  She's going to exhibit symptoms." Defense counsel then asserted that the evidence in the case would show that "what the police claim happened is not actually what

4

happened in this case," and that Ichimura did not kick any of the officers.

The State's evidence established that when police officer Christopher Nutter arrived at the scene, he saw two people walking away and Ichimura waiving her hands at him and flagging him down. Officer Nutter testified that Ichimura was acting "[e]xcited, kind of hurried, [and] urgent[,]" and that Ichimura told him that the two people walking away had possession of her bag. Officer Nutter told the people to stop and received their permission to show Ichimura their bag. Ichimura could not describe "anything that would have been in the bag or what the bag looked like[.]" Ichimura's mother, Betty Ichimura (Betty), who was with Ichimura at the scene, was "adamant" that the bag did not belong to Ichimura.

Ichimura insisted that Officer Nutter make a theft report, and he informed her that he would.[3] Police officers Denny Santiago and Vincent Gonzalez then arrived on the scene. While Officer Nutter was completing the report, he heard Ichimura engaging in some "verbal back-and-forth" with Officer Santiago. Officer Nutter further stated that Ichimura was acting:

> Just irrational--I mean, I understand that people get upset. But typically when people call us to make the

---

[3] Officer Nutter did not complete the theft report for Ichimura's bag because he was interrupted by the subsequent events.

> reports they understand that we are--we have safety to be concerned with. We don't want them reaching in bags, we don't want them going all over the place, getting into it with other people around them, stuff like that. They usually--most people let us--let us do our part of the job without acting irrationally.
>
> . . . .
>
> [Ichimura was i]nsisting on reaching in bags, disregarding officers' requests to stay in one place, answer questions without yelling at the officers, things like that.

Officer Santiago testified that Ichimura was "extremely upset, very agitated," was on a "rant," and was "very loud spoken, almost to a point where yelling." Officer Santiago also testified that, based on Ichimura's behavior, it appeared to him that Ichimura was more likely under the influence of drugs rather than suffering from a mental illness:

> PROSECUTOR: Okay. So again, you didn't make any--did you make any judgment--I'm sorry--about whether she, you know, was high or whether she was mental?
>
> OFFICER SANTIAGO: It appeared to me that it would lean more towards being on something. There's sometimes clues when somebody has mental illness, if they're--

Defense counsel then objected as to foundation, which the court sustained. The DPA asked Officer Santiago whether he had been trained to recognize signs of drug intoxication. Officer Santiago replied that he received annual training from his department psychologist on "ways to recognize and ways to deal with people with mental illness." He also stated that his training applied to people that are under the influence of drugs.

Over the objection of the defense, the circuit court allowed Officer Santiago to answer, reasoning that it went toward his state of mind, which would help explain his interaction with Ichimura:

> PROSECUTOR: Okay. And, so, based on your training, then, and experience, what is your opinion of the way Defendant was behaving?
>
> OFFICER SANTIAGO: It seemed to me that she was more--
>
> DEFENSE COUNSEL: And, again, Your Honor, I'm going to object as to foundation.
>
> THE COURT: Well, he may testify based on the foundation as to what his perception was, which may in turn give you some leads as to what he did. But it--it--it's not for the truth of the matter as such, but he can describe his--his reaction. So I'll allow the testimony for that limited purpose.
>
> . . . .
>
> OFFICER SANTIAGO: It appeared to be that she was more on drugs than having a mental illness.
>
> PROSECUTOR: But you didn't know whether she was on drugs or not; right?
>
> OFFICER SANTIAGO: No.

Officer Nutter stated that Ichimura's uncooperative behavior led him to check for an outstanding warrant. Officer Santiago testified that while the officers were waiting for police dispatch to confirm the warrant, Ichimura started yelling for "somebody to call the police," and that she "kn[ew] her rights" and "doesn't have a warrant."

The check came back with a warrant for Ichimura, and the officers had her sit down on the curb because they determined

7

that she was so upset and angry that she might run away or hurt someone. Officer Santiago feared that Ichimura might grab something like a weapon that could hurt them, so he told Ichimura to "not to go through her bag."

Officer Santiago testified that during the incident, he was not informed whether Ichimura had a mental illness or physical ailment. Officer Santiago also testified that even if he had known that Ichimura had a mental illness, the illness "didn't seem to impair [Ichimura] to the point where [he] wouldn't arrest her for the warrant," and it would not have affected the process in which he arrested Ichimura. Officer Santiago further testified that the court that issued the warrant for her arrest "would have been made aware if [Ichimura] had a mental illness because that might have affect --[.]" Before he could finish his sentence, defense counsel objected based on speculation and foundation and moved to strike the response. The court replied that "the question--once again, it involves the state of mind, and the question of would he have done anything differently . . . calls for some assumptions on his part. So I'm going to allow the testimony." Officer Santiago answered that he would not have handled the case any differently if he had known Ichimura had a mental illness.

Officer Gonzalez also told Ichimura several times to

stop going through her bag, as the officers were concerned about their safety. However, Ichimura began to go through her bag, and when she did not stop, Officer Gonzalez leaned over Ichimura as she sat on the curb, grabbed the bag, and tried to pull it from her. Ichimura rolled onto her back and started kicking, and her kick connected with Officer Gonzalez' groin, which he described as very painful.

Officer Gonzalez turned to the side to avoid being kicked again and continued to hold onto the bag, worried for his safety because he was not sure if the bag contained a weapon. As Officer Gonzalez blocked his groin with his leg, Ichimura kicked his leg several times.

After Ichimura was handcuffed and taken to a police car, Officer Gonzalez asked Ichimura several times to bring her legs into the car, but she refused to do so. As Officer Gonzalez reached down to place Ichimura's legs into the car, Ichimura rolled onto her back and kicked Officer Gonzalez once again in his groin, and, when he turned to the side, she kicked his leg and then his kneecap. Officer Gonzalez told Ichimura to stop kicking, and when she did not stop, he took out his pepper spray and "gave her a one-second burst into her face." The pepper spray caused Ichimura to stop kicking.

After the State rested its case, the court held a bench

conference on the record with counsel and the defendant:

> THE COURT:  (Indiscernible) do you wish to testify?  Do you remember a day or two ago (indiscernible) testify if you wanted to (indiscernible)?
>     So it's your choice.
>     Now, you've seen how the process works, so (indiscernible) if you testify [the deputy prosecuting attorney] will cross-examine you (indiscernible) friendly questioning.  So you have to -- if you -- if you do decide to testify, you have to (indiscernible) cross-examination.
>     You also have the right not to testify. You don't have to say anything (indiscernible). (Indiscernible) tell the jury that they can't hold that against you (indiscernible).
>     Do you understand the things that I've told you this morning -- just now, while we're up here?
>
> THE DEFENDANT:  Uh-huh.
>
> THE COURT:  Okay.  So are there any other witnesses (indiscernible)?
>
> [DEFENSE COUNSEL]:  Yes, Your Honor.
>
> THE COURT: Okay.  (Indiscernible).
>
> THE DEFENDANT:  (Indiscernible).
>
> THE COURT:  Okay. And after that, you really have to decide, and it's your decision.
>     So (indiscernible), do you want to testify?
>
> THE DEFENDANT:  I think I should.
>
> THE COURT:  You're still going to talk about it?
>
> [DEFENSE COUNSEL]:  Yeah.
>
> THE COURT:  Okay.  Just remember, he's learned counsel.  (Indiscernible).
>     Okay?
>
> THE DEFENDANT:  Okay.
>
> THE COURT:  All right.

> Betty Ichimura testified on behalf of the defense.

Betty testified that Ichimura cooperated with the officers and

that she did not see Ichimura either kick or strike any of the officers. Betty also testified that Ichimura had a handicap, for which she takes medication and is treated by a psychiatrist.

The defense rested its case. The court then stated that the evidence-taking portion of the trial was over, and excused the jury. The court then held another conference regarding Ichimura's decision on whether to testify:

> THE COURT: The jury has now departed. The parties remain.
>     I would like to ask one more time now, Ms. Ichimura. I -- I know you kind of sounded like you wanted to testify. Your side has rested. So your mom testified but you didn't.
>     Now, what is your preference on testimony? Because I can still open up the case again and let you testify if you want to.
>     Okay?
>
> THE DEFENDANT: No, thank you.
>
> THE COURT: I'm sorry?
>
> THE DEFENDANT: No, thank you.
>
> THE COURT: Okay. That means you don't want to testify. Very good, then. That means that the case – the testimonial part of the case is over.

The jury found Ichimura guilty as charged. The court entered its Judgment of Conviction and Sentence on March 14, 2013, sentencing Ichimura to one year of probation, 180 days of imprisonment, and various fees. Execution of sentence was stayed pending disposition of Ichimura's case on appeal.

**B.    ICA Appeal**

On appeal to the ICA, Ichimura argued that the trial

11

court abused its discretion when it permitted Officer Santiago to testify that: (1) it appeared "Ichimura was more on drugs than under a mental illness"; and (2) his belief that the issuing court for Ichimura's warrant for arrest "would have been made aware if she had a mental illness."

The State argued that the trial court properly exercised its discretion in allowing Officer Santiago's first statement. The State agreed that Officer Santiago's second remark was speculative, but contended it was harmless because it did not distract the jury from determining the elements of the offense.

In a Summary Disposition Order, the ICA concluded that the trial court did not abuse its discretion in allowing Officer Santiago's first statement. The ICA concluded that the trial court should not have permitted Officer Santiago's second statement, but that any error was harmless. Therefore, the ICA affirmed the circuit court's judgment, and filed its Judgment on Appeal on May 10, 2016.

## II. Discussion

Ichimura's application for writ of certiorari presents two questions:

> Whether the ICA gravely erred when it held that the
> trial court did not abuse its discretion when it
> permitted a police officer who was present at the
> scene of the incident to testify that

12

> (1) Ichimura "appeared to be under the influence of drugs rather than suffering from a mental illness" and
>
> (2) that the judge who issued a bench warrant for Ichimura's arrest for an unrelated matter would have known whether or not Ichimura had a mental illness.

For the following reasons, we determine that the circuit court erred in admitting Officer Santiago's statements at trial and failing to conduct a proper Tachibana colloquy with Ichimura.

We find that Officer Santiago's testimony during trial that: (1) it appeared Ichimura was "more on drugs than having a mental illness;" and 2) he assumed that the court who issued Ichimura's arrest warrant "would have been made aware if [Ichimura] had a mental illness" was improper. Officer Santiago's first statement was improper because it lacked foundation and in any event was not relevant to explain the officer's subsequent actions. Thus, the circuit court should have sustained defense counsel's objection. Officer Santiago's second statement was improper because it was based on mere speculation, and therefore the circuit court should have stricken the testimony as requested by defense counsel.

Although we determine that the circuit court erred in permitting Officer Santiago's statements at trial, we need not address whether the error was harmless because we conclude that

13

the circuit court plainly erred in failing to conduct a proper colloquy with Ichimura regarding her decision not to testify at the end of the trial.[4]

In Tachibana v. State, this court held that in order to "protect the right to testify under the Hawaiʻi Constitution, trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify."  79 Hawaiʻi 226, 236, 900 P.2d 1293, 1303 (1995).  "A defendant's waiver of a constitutional right must be knowing, intelligent, and voluntary."  State v. Staley, 91 Hawaiʻi 275, 287, 982 P.2d 904, 916 (1999).  This court stated that when conducting the colloquy, the trial court must "be careful not to influence the defendant's decision whether or not to testify and should limit the colloquy to advising the defendant":

> that he [or she] has a right to testify, that if he [or she] wants to testify that no one can prevent him [or her] from doing so, [and] that if he [or she] testifies the prosecution will be allowed to cross-examine him [or her].  In connection with the privilege against self-incrimination, the defendant should also be advised that he [or she] has a right

---

[4]     Accordingly, we find it unnecessary to address the timing of this colloquy, which took place after the defense rested, or to address the lack of an audible response from Ichimura during the pretrial colloquy.  See State v. Han, 130 Hawaiʻi 83, 89, 306 P.3d 128, 134 (2013) (finding pretrial colloquy "problematic" when there was no audible response by defendant reflected on the record, since it was not known whether the defendant was able to understand the court's advisement, thus precluding appellate review of the adequacy of the advisement).  However, in view of the inadequacy of the colloquy during the trial, we need not address the effect of the pretrial colloquy.  Id.

14

> not to testify and that if he [or she] does not
> testify then the jury can be instructed about that
> right.

Tachibana, 79 Hawaiʻi at 236 n.7, 900 P.2d at 1303 n.7 (quotation omitted).

Here, the circuit court failed to engage Ichimura in a proper Tachibana colloquy after the State rested its case. The court stated to Ichimura that: (1) if she testified, then she would be subject to cross-examination; and (2) she had the right not to testify. The colloquy was insufficient because the court failed to inform Ichimura that: (1) she had a right to testify; and (2) if she wanted to testify that no one could prevent her from doing so. Id. (quotation omitted).

Further, the circuit court did not obtain a proper on-the-record waiver of Ichimura's right to testify. This court has stated that "colloquy between the judge and a defendant involves a verbal exchange in which the judge ascertains the defendant's understanding of the defendant's rights." State v. Han, 130 Hawaiʻi at 84, 306 P.3d at 129. The "failure to engage in a true exchange to ascertain the defendant's understanding of the individual rights comprising the Tachibana colloquy results in the failure to 'ensure that [the defendant] understood his rights [and] amounts to a failure to obtain the on-the-record waiver required by Tachibana.'" State v. Pomroy, 132 Hawaiʻi 85, 93,

15

319 P.3d 1093, 1101 (2014) (emphasis added) (citing Han, 130 Hawaiʻi at 91, 306 P.3d at 136); see also Staley, 91 Hawaiʻi at 287, 982 P.2d at 916 (citation and internal quotation marks omitted) ("[I]f the [trial] court does not establish on the record that the defendant has waived his [or her] right to testify, it is extremely difficult to determine at a post-conviction relief hearing whether such a waiver occurred.").

Here, the court "recited a litany of rights[,]" and then asked Ichimura if she "unders[tood] the things that [it] told her." See Pomroy, 132 Hawaiʻi at 93, 319 P.3d at 1101. In response, Ichimura simply said, "Uh-huh." Moreover, this court has stated that the presence of a "salient fact" concerning the defendant's ability to understand the colloquy "require[s] that a court effectively engage the defendant in a dialogue that will effectuate the rationale behind the colloquy and the on-the-record waiver requirements as set forth in Tachibana." Han, 130 Hawaiʻi at 92, 306 P.3d at 137 (citing Tachibana, 79 Hawaiʻi at 235, 900 P.2d at 1302); see also United States v. Duarte-Higareda, 113 F.3d 1000, 1003 (9th Cir. 1997) (stating that a "salient fact," like a defendant's language barrier or mental illness, that is known to the court, "put[s] the court on notice that [the defendant's] waiver might be less than knowing and intelligent," and serves as an additional reason for the

16

court to engage in a colloquy with the defendant "to carry out its 'serious and weighty responsibility' of ensuring that a defendant's jury waiver is voluntary, knowing, and intelligent").

In the instant case, Ichimura's mother testified that Ichimura had a "handicap" for which she took medication, and that she was being treated by a psychiatrist. This was a "salient fact" of which the circuit court was aware, and thus should have served as an additional reason for the court to conduct a more searching inquiry of Ichimura, rather than relying on her "Uh-huh" response to a list of rights. Similarly, given Ichimura's initial inclination to testify when first engaged by the court after the State rested, the court should have conducted a more searching inquiry when it spoke with her again at the end of the defense's case.

This court has held that "to determine whether a waiver [of a fundamental right] was voluntarily and intelligently undertaken, this court will look to the totality of the facts and circumstances of each particular case." Han, 130 Hawaiʻi at 89, 306 P.3d at 134. Here, given the totality of the circumstances, Ichimura's waiver was not voluntarily and intelligently made.[5] "[W]here plain error has been committed and substantial rights

---

[5] At oral argument before this court, the State conceded that the colloquy at the end of trial did not comply with Tachibana's requirements, and thus that there was a Tachibana violation.

17

have been affected thereby, the error may be noticed even though it was not brought to the attention of the trial court." State v. Miller, 122 Hawaiʻi 92, 117, 223 P.3d 157, 182 (2010) (brackets and emphasis omitted) (quoting State v. Kaiama, 81 Hawaiʻi 15, 25, 911 P.2d 735, 745 (1996)); see also Hawaiʻi Rules of Penal Procedure Rule 52(b) (1977). Given the circumstances here, we conclude that Ichimura's substantial rights were affected by the circuit court's errors.

The circuit court's failure to conduct an adequate colloquy was not harmless. "Once a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt." Tachibana, 79 Hawaiʻi at 240, 900 P.2d at 1307 (citations omitted). "[I]t is inherently difficult, if not impossible, to divine what effect a violation of the defendant's constitutional right to testify had on the outcome of any particular case." State v. Hoang, 94 Hawaiʻi 271, 279, 12 P.3d 371, 379 (2000) (citation omitted). Here, the record does not offer any indication as to what Ichimura would have said under oath on the witness stand. See id. (citation omitted). Thus, it cannot be said that the circuit court's inadequate colloquy was harmless beyond a reasonable doubt, Tachibana, 79 Hawaiʻi at 240, 900 P.2d at 1307, because it is

18

unknowable from the record whether any testimony by Ichimura would have established reasonable doubt that she committed the offense charged, see Pomroy, 132 Hawaiʻi at 94, 319 P.3d at 1102.

Therefore, we conclude that the circuit court erred in failing to conduct a proper Tachibana colloquy.

### IV. Conclusion

For the foregoing reasons, the circuit court erred in admitting the two challenged statements of Officer Santiago, and failing to conduct a proper Tachibana colloquy with Ichimura. Accordingly, we vacate the ICA's May 10, 2016 Judgment on Appeal and the circuit court's March 14, 2013 Judgment of Conviction and Sentence, and remand this case to the circuit court for further proceedings consistent with this opinion.

DATED: Honolulu, Hawaiʻi, June 15, 2017.

Elika O. Stimpson
for petitioner

James M. Anderson
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

