**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-18-0000614**
**30-MAR-2021**
**07:50 AM**
**Dkt. 48 MO**

NO. CAAP-18-0000614

IN THE INTERMEDIATE COURT OF APPEALS
OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
ALEXANDER BALECHA PELEN, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTA-17-03881)


MEMORANDUM OPINION
(By:  Leonard, Presiding Judge, Hiraoka and Nakasone, JJ.)


Defendant-Appellant Alexander Balecha Pelen (**Pelen**)
appeals from the February 7, 2018 Notice of Entry of Judgment[1]
and the July 19, 2018 Order Revoking Driver's License and
Granting Ignition Interlock Driving Permit entered by the

---

[1]     The judgment attached to Pelen's Notice of Appeal, names a different defendant.  Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 3(c)(2) requires that a copy of the judgment or order being appealed from be attached as an exhibit to the notice of appeal.  However, this court has observed that "a mistake in designating the judgment . . . should not result in loss of the appeal as long as the intention to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake."  State v. Graybeard, 93 Hawaiʻi 513, 516, 6 P.3d 385, 388 (App. 2000).  It can be inferred that Pelen appeals from the July 19, 2018 Order Revoking Driver's License and Granting Ignition Interlock Driving Permit, the last order in this case, and the February 7, 2018 judgment, an accurate copy of which can be found in the District Court record.

District Court of the First Circuit (**District Court**).[2]  Pelen was convicted of Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**), in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1)(b)(1) (2007 & Supp. 2017)[3] and sentenced, *inter alia*, to a $200 fine and other mandatory penalties.

On appeal, Pelen contends that the District Court erred by (1) performing an inadequate Tachibana colloquy; (2) accepting a stipulation as to the training and qualifications of the officer who administered the standard field sobriety test (**SFST**) without any colloquy of Pelen; (3) denying Pelen's motion to dismiss the "defective charge;"[4] (4) admitting the SFST officer's police report into evidence; (5) denying Pelen's motion to strike testimony that was not based on the present recollection of the witnesses;[5] (6) allowing the State to reopen its case after it

---

[2]     The Honorable William M. Domingo presided.

[3]     HRS § 291E-61 read at the time of the offense:

    (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

    (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

    . . . .

    (b) A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced without possibility of probation or suspension of sentence as follows:

    (1) For the first offense, or any offense not preceded within a five-year period by a conviction for an offense under this section or section 291E-4(a)[.]

[4]     Pelen does not present any argument on this point regarding the denial of the motion to dismiss, and thus, we deem it waived under HRAP Rule 28(b)(7).

[5]     As to this point, Pelen fails to comply with HRAP Rule 28(b)(4)(A), which requires that when the point of error involves the admission or rejection of evidence, the point must include the full substance of the evidence at issue.  Pelen claims that the District Court's denial of the motion meant that "all of the testimony given by the STATE's witnesses

2

had rested; and (7) convicting Pelen based on inadmissible evidence.[6]

Because we hold that Pelen did not validly waive his right to testify, and that the SFST officer's police report was erroneously admitted under the past recollection recorded exception to the hearsay rule, we vacate and remand.

## I. BACKGROUND

At the beginning of the judge trial on February 7, 2018, the District Court gave Pelen the following advisement:

> THE COURT: [B]efore the trial begins, the Court must advise you that you have a right to testify and a right not to testify, that I will question you further toward the end of your trial whether you want to waive either of these rights to make sure that you have been fully informed of your rights, and to make sure that any decision you make is your decision.
>
> DEFENDANT PELEN: Yes.
>
> THE COURT: You understand, sir?
>
> DEFENDANT PELEN: Yes.

Plaintiff-Appellee State of Hawai'i (**State**) and Pelen's counsel stipulated that Honolulu Police Department (**HPD**) Officer Shawn Borges (**Officer Shawn**)[7] was qualified to administer the SFST.

HPD Officer Ross Borges (**Officer Ross**) testified that on the night of October 13, 2017, he was traveling westbound on

_____

remained in the record." Pelen's point does not contain the offending portions of the officers' testimonies that Pelen claims the District Court erroneously failed to strike. Therefore, we disregard this point of error under HRAP Rule 28(b)(4), and in light of our holding infra, regarding the erroneous admission of the SFST officer's police report.

[6] Pelen does not present any argument on this last point of error regarding the erroneous conviction of Pelen based on inadmissible evidence, and thus, we deem it waived under HRAP Rule 28(b)(7).

[7] The arresting officer Ross Borges and the officer who administered the SFST, Shawn Borges, both have the same last name. To avoid confusion, we refer to the officers by their first names.

Kapiʻolani Boulevard when he saw Pelen, who was driving eastbound, turn left where no left turns were allowed. Pelen parked at the Rock-Za parking lot and Officer Ross followed, parking behind Pelen's vehicle. When the officer approached, Pelen was in the driver's seat and another male was in the passenger seat. The officer observed that Pelen had difficulty removing the key from the ignition. When asked for his registration, insurance, and license, Pelen gave the officer his license but "had a lot of difficulty providing the documents that [he] requested."

Officer Ross testified that, while questioning Pelen, he smelled the odor of alcohol on Pelen's breath and observed that Pelen had red, watery eyes and slightly slurred speech. When the officer read him the "preliminary alcohol screening admonition," Pelen asked several questions, and mentioned he had been drinking, explaining that he had an argument with his wife. Officer Ross said Pelen was advised of his <u>Miranda</u> rights prior to performing the SFST.

Officer Shawn administered the SFST to Pelen. Officer Shawn testified that Pelen had red, bloodshot, watery eyes with a strong smell of alcohol coming from him. The officer asked "medical rule-out questions," and conducted the horizontal gaze nystagmus and "walk-and-turn" tests. The officer observed that during the instructional portion of the walk-and-turn test, Pelen "couldn't hold the start position. He kept, not falling over, but he just couldn't hold the position." When asked to describe Pelen's performance on the test, Officer Shawn could not recall on which step Pelen stopped walking and requested his SFST report to refresh his memory. The prosecutor presented the SFST report, retrieved it; and asked Officer Shawn if it had refreshed his memory, and the officer responded that it had.

Officer Shawn then testified regarding which steps Pelen missed and that on the turn portion, "it was nothing like I

4

demonstrated." The last test administered was the one-leg-stand test. The officer asked to review the SFST report again. The prosecutor showed the officer the SFST report, and the officer agreed that the report independently refreshed his recollection. Officer Shawn testified that Pelen put his foot down multiple times, "swayed to balance," and "leaned one way and then caught himself to try and lean back the other way."

During cross-examination, Officer Shawn agreed that he did not have a "present recollection of particular specific factual details" of the walk-and-turn test. He also agreed that his testimony regarding Pelen's inability to hold a starting position was based on present recollection "of the report" rather than a recollection of the event.

On redirect, the prosecutor again showed Officer Shawn the SFST report. The officer noted that it was in his handwriting and was signed and dated on October 13, 2017. Officer Shawn testified that he created the document "as we were doing the test."

The State requested to admit the SFST report as a "past recollection recorded" because the officer "did make it during the field sobriety test, at the same time that he made it." Pelen objected based on hearsay, lack of foundation, and because the document was a police report which fell into one of the "specifically excluded hearsay exceptions" under the Hawaii Rules of Evidence (**HRE**). Pelen further argued that there was a lack of foundation for the past recollection recorded exception, and even if foundation had been laid, that the past recollection recorded exception did not permit the admission of police reports in criminal cases. The District Court received the SFST report into evidence over Pelen's objection. The State then rested.

Pelen's counsel then moved to strike Officer Shawn's testimony regarding the SFST on the basis that the officer did not have a present recollection of his observations and was

5

testifying as to "what he could from reading his police report." Pelen also moved to strike the testimony of "all officers" on the same grounds. He renewed his objection to the police report based on the hearsay rule and HRE Rule 803(b)(8).[8]

The State requested that if the SFST report was "not admitted" into evidence, that Officer Shawn be recalled to read his report into the record, and the prosecutor explained that he had dismissed the officer "believing that [the report] was in evidence." The District Court granted the request to recall Officer Shawn over Pelen's objection, and clarified that "it will not accept Exhibit 1 [(SFST report)]." Over the defense's running objection, Officer Shawn read portions of his SFST report into the record, which included, *inter alia*, Officer Shawn's observations of Pelen during the walk-and-turn and the one-leg stand tests.

The State rested a second time, and the defense indicated it would rest. At that time, the District Court engaged in the following colloquy with Pelen:

> THE COURT: All right. Mr. Pelen –
>
> DEFENDANT PELEN: Yes.
>
> THE COURT: -- how old are you, sir?
>
> DEFENDANT PELEN: Fifty-six.
>
> THE COURT: How many years of schooling have you had?
>
> DEFENDANT PELEN: I went to college.
>
> THE COURT: Okay. Do you understand the English language?
>
> DEFENDANT PELEN: Yes.
>
> THE COURT: Have you taken any drugs and/or medication or alcoholic drinks in the last 48 hours?
>
> DEFENDANT PELEN: No.
>
> THE COURT: Is your mind clear?

---

[8]     HRE Rule 803(b)(8) is set forth in the Discussion section <u>infra</u>.

DEFENDANT PELEN:  Yes.

THE COURT:  Have you been charged with a felony offense before?

DEFENDANT PELEN:  I had a fight a long time ago.

THE COURT:  Okay.  Have you ever been to a criminal court before?

DEFENDANT PELEN:  Yes.

THE COURT:  Have you testified before?

DEFENDANT PELEN:  No.

THE COURT:  Okay.  I'm going to advise you of some very important rights.  If you don't understand anything I say, please let me know.  Okay? Do you understand that you have a constitutional right to make -- not to make incriminating statements?

DEFENDANT PELEN:  Yes.

THE COURT:  Okay.  Do you understand that you have the constitutional right to remain silent and not to testify at this trial?

DEFENDANT PELEN:  Yes.

THE COURT:  Okay.  Do you understand that if you elect to testify, anything you can -- that you say can and may be used against you?

DEFENDANT PELEN:  Yes.

THE COURT:  Yes.  Okay.  Do you understand that if you elect to testify, you will be subject to cross-examination where the prosecutor will be permitted to ask you questions, and you will be required to answer all of those questions?

DEFENDANT PELEN:  Yes.

THE COURT:  Okay.  Although you should confer with your attorney whether to testify, you understand that the final decision is entirely up to you?

DEFENDANT PELEN:  Yes.

THE COURT:  Okay.  Do you understand --let's see now. Do you have any questions about what I've explained to you?

DEFENDANT PELEN:  No.

THE COURT:  Understanding all that I've explained to you, do you wish to testify?

DEFENDANT PELEN:  No, thank you.

> THE COURT: Okay. All right. Court finds that Mr. Pelen has voluntarily, intelligently, and knowingly waived his right to remain silent -- to testify.
>
> [DEFENSE COUNSEL]: And, Judge, we're going to object to the Court asking Mr. Pelen during the -- in the middle of a trial whether or not he has ever been convicted of a felony.
>
> THE COURT: All right. That will be noted.

Pelen did not testify.

The District Court found Pelen guilty based on the testimonies of the two officers which the court deemed to be credible, in concluding that Pelen was "under the influence of alcohol to a point where his normal mental faculties were impaired." Pelen timely appealed.

## II. STANDARDS OF REVIEW

### A. Waiver of Right to Testify

"The validity of a criminal defendant's waiver of the right to testify is a question of constitutional law reviewed by this court under the right/wrong standard." State v. Eduwensuyi, 141 Hawai'i 328, 332, 409 P.3d 732, 736 (2018) (citing State v. Gomez-Lobato, 130 Hawai'i 465, 468-69, 312 P.3d 897, 900-01 (2013)).

### B. Waiver of Constitutional Right

"The validity of a defendant's waiver of a constitutional right is a question of constitutional law" that is reviewed "under the right/wrong standard." State v. Wilson, 144 Hawai'i 454, 460, 445 P.3d 35, 41 (2019) (citations omitted).

### C. Admissibility of Evidence

"Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard." State v. Ortiz, 91 Hawai'i 181, 189, 981 P.2d 1127, 1135 (1999) (internal quotation marks and citations omitted). "Where the admissibility of evidence is determined by application of the hearsay rule, there can be only one correct result, and

the appropriate standard for appellate review is the right/wrong standard."  State v. Abrigo, 144 Hawaiʻi 491, 497, 445 P.3d 72, 78 (2019) (internal quotation marks, brackets, and citation omitted).

## III. DISCUSSION

### A.    The Tachibana colloquy was deficient under State v. Eduwensuyi.

Under Tachibana v. State, 79 Hawaiʻi 226, 236, 900 P.2d 1293, 1303 (1995), "trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify."  Tachibana instructs the trial court to advise the defendant:

> [T]hat he [or she] has a right to testify, that if he [or she] wants to testify that no one can prevent him [or her] from doing so, [and] that if he [or she] testifies the prosecution will be allowed to cross-examine him [or her]. In connection with the privilege against self-incrimination, the defendant should also be advised that he [or she] has a right not to testify and that if he [or she] does not testify then the jury can be instructed about that right.

Id. at 236 n.7, 900 P.2d at 1303 n.7 (alterations in original) (citations omitted).  A Tachibana colloquy has two components: first, an apprisal of the "fundamental principles pertaining to the right to testify and the right not to testify," and second, "a verbal exchange between the judge and the defendant" to ascertain whether the defendant understands his or her rights.  State v. Celestine, 142 Hawaiʻi 165, 170, 415 P.3d 907, 912 (2018).

The State concedes that the District Court's Tachibana colloquy was deficient, and this error was not harmless beyond a reasonable doubt.  Nevertheless, "this court must still determine whether the error was properly preserved, was prejudicial to [Pelen], and is supported by the record."  State v. Hoang, 93

9

Hawaiʻi 333, 336, 3 P.3d 499, 502 (2000) (citation omitted). "In other words, a confession of error by the prosecution 'is not binding upon an appellate court, nor may a conviction be reversed on the strength of [the prosecutor's] official action alone.'" Id. (quoting Territory v. Kogami, 37 Haw. 174, 175 (1945)).

Pelen and the State agree that the final colloquy was defective because it lacked an advisement that if Pelen wanted to testify, no one could prevent him from doing so. The parties agree that the District Court's advisement "the final decision is entirely up to you" was inadequate. This language is similar to the language the supreme court found inadequate in Eduwensuyi, 141 Hawaiʻi at 330, 490 P.3d at 734, where the defendant was advised "ultimately, it's your decision" whether to testify. "[T]he advisement that no one can prevent the defendant from testifying is critical and the only Tachibana advisement that emphasizes that the waiver of the right to testify must be voluntary[.]" Id. at 334, 409 P.3d at 738. Absent such an advisement and accompanying colloquy, without more, there is no "objective basis" to find that a defendant voluntarily waived his or her right to testify. State v. Han, 130 Hawaiʻi 83, 91, 306 P.3d 128, 136 (2013). In this case, there is no other basis upon which we can conclude that Pelen voluntarily relinquished his right to testify. See id. Therefore, the District Court's colloquy failed to obtain from Pelen a knowing, voluntary and intelligent waiver of his right to testify.

"Once a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt." Tachibana, 79 Hawaiʻi at 240, 900 P.2d at 1307. "The relevant question 'is whether there is a reasonable possibility that the error might have contributed to the conviction.'" Celestine, 142 Hawaiʻi at 173, 415 P.3d at 915

10

(quoting Han, 130 Hawaiʻi at 93, 306 P.3d at 138)(emphasis in original)(brackets and underscoring omitted).

The State does not argue the error was harmless beyond a reasonable doubt, conceding that "it is unknown whether Defendant's testimony would have had any effect on the outcome of his case." Such a concession is appropriate, because "it is inherently difficult, if not impossible, to divine what effect a violation of the defendant's constitutional right to testify had on the outcome of any particular case." State v. Pomroy, 132 Hawaiʻi 85, 94, 319 P.3d 1093, 1102 (2014) (quoting Hoang, 94 Hawaiʻi at 279, 12 P.3d at 379). As in Pomroy, the record in this case "offers no clue to what [Pelen] would have said, under oath, on the witness stand." Id.

In this case, Pelen's challenge has merit because the record does not reflect that Pelen knowingly, intelligently and voluntarily waived his right to testify, and we cannot conclude that the error was harmless. See Eduwensuyi, 141 Hawaiʻi 328, 409 P.3d 732.

> **B.    Under State v. Wilson, a colloquy was not required for the stipulation to the witness's qualifications.**

Pelen contends that the District Court failed to conduct a colloquy following the parties' stipulation regarding Officer Shawn's qualifications and training to administer and interpret the SFST. In support of his argument, Pelen relies on State v. Murray, 116 Hawaiʻi 3, 169 P.3d 955 (2007) (requiring an on-the-record colloquy before a trial court accepts a stipulation to an element of a charged offense to ensure defendant's intelligent, knowing, and voluntary waiver of fundamental due process right to have all elements proved beyond a reasonable doubt), and State v. Ui, 142 Hawaiʻi 287, 418 P.3d 628 (2018) (rejecting a "trial strategy" exception to the colloquy requirement where defense counsel's stipulation to facts that had

11

the effect of establishing an element of the charged offense, and reaffirming colloquy requirement of Murray before a trial court can accept waiver of any fundamental right).

In Wilson, 144 Hawaiʻi at 464, 445 P.3d at 45, the Hawaiʻi Supreme Court considered this identical issue in light of Hawaiʻi precedent, including, *inter alia*, Ui and Murray. The Wilson Court explained that the parties' stipulation in an OVUII case that the officer was "qualified and certified" to conduct the SFST and received "specialized training in administering and grading" the SFST, did not constitute proof that the defendant was operating a vehicle or that the defendant was impaired, and thus, a colloquy with the defendant prior to accepting the stipulation was not required under these circumstances. Id. The Wilson Court held that because "the stipulation in this case did not establish facts satisfying any elements of the charged offense," the stipulation "did not amount to a waiver of Wilson's fundamental right to have every element of a charged offense proven beyond a reasonable doubt." Id. The Court recognized that "this stipulation was to an evidentiary foundation involving the qualification of a witness," and the stipulation did not "significantly impinge" upon Wilson's constitutional confrontation rights. Id. Under the circumstances before it, the Wilson Court concluded, "we cannot say that the stipulation so infringed upon Wilson's right to confront [the] [o]fficer that a colloquy was required." Id. at 465, 445 P.3d at 46.

Wilson applies to this case and is dispositive. As in Wilson, we cannot say that the parties' stipulation to Officer Shawn's qualifications and training to administer and interpret the SFST "so infringed" upon Pelen's constitutional right to confront witnesses that a colloquy was required in this case. Id. The stipulation did not establish, nor did it have the effect of proving any element of the OVUII offense, and thus, the stipulation did not amount to a waiver of Pelen's right to have

every element proven beyond a reasonable doubt.  See id.  Pelen's challenge on this ground is without merit.

      **C.    Under State v. Abrigo, the SFST officer's report was erroneously admitted under the past recollection recorded exception to the hearsay rule.**

      Pelen contends that the District Court erred in admitting Officer Shawn's police report regarding the SFST, over Pelen's objections based on hearsay and lack of foundation. Pelen also argues that the police report exclusion to the HRE 803(b)(8)[9] public records exception to the hearsay rule prohibited the District Court's admission of the police report under the past recollection recorded exception to the hearsay rule under HRE Rule 802.1(4).[10]

_____

    [9]    HRE Rule 803(b)(8), the "public records" exception to the hearsay rule provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (b) Other exceptions.
>
> . . . .
>
> (8) Public records and reports.  Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel . . . .

(emphasis added).

    [10]    HRE Rule 802.1(4), the "past recollection recorded" exception to the hearsay rule provides:

> The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:
>
> . . . .
>
> (4) Past recollection recorded.  A memorandum or record concerning a matter about which the witness once had knowledge but

13

In <u>Abrigo</u>, 144 Hawaiʻi at 505, 445 P.3d at 86, the Hawaiʻi Supreme Court considered this identical issue and held that "police reports may not be admitted against a defendant in a criminal case under the HRE Rule 802.1(4) past recollection recorded hearsay exception." In <u>Abrigo</u>, the defendant's conviction for OVUII was vacated and remanded, where the defendant was convicted on the "sole basis" of an SFST police report authored by an officer "who testified at trial that he could no longer remember the material facts underlying the defendant's arrest." <u>Id.</u> at 494, 445 P.3d at 75. The defendant had moved to strike the officer's testimony, and the trial court denied the motion. <u>Id.</u> at 496, 445 P.3d at 77. The <u>Abrigo</u> Court explained that "records excluded by the public records exception" under HRE Rule 803(b)(8) "cannot be read into evidence based on an alternative evidentiary ground." <u>Id.</u> at 494, 445 P.3d at 75. The Court examined relevant Hawaiʻi precedent and caselaw from other jurisdictions on this issue, the history of the public records hearsay exception, and considered the "illogical results" of admitting police reports through the past recollection recorded hearsay exception. <u>Id.</u> at 499-505, 445 P.3d at 80-87. The <u>Abrigo</u> Court concluded that "litigants may not utilize another hearsay exception as a back door to bypass the restrictions contained in the public records hearsay exception." <u>Id.</u> at 494, 445 P.3d at 75. The Hawaiʻi Supreme Court vacated Abrigo's conviction, and remanded to the district court for further proceedings consistent with its opinion. <u>Id.</u> at 505, 445 P.3d at 86. Applying <u>Abrigo</u> to this case, we conclude that the District Court erroneously admitted evidence from Officer Shawn's

---

now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

SFST report into evidence, and Pelen's challenge on this ground has merit.  See id.

Because we vacate and remand for the reasons set forth above, we do not reach Pelen's remaining point of error challenging the reopening of the State's case.

## IV.  CONCLUSION

Based on the foregoing, we vacate the February 7, 2018 Notice of Entry of Judgment and the July 19, 2018 Order Revoking Driver's License and Granting Ignition Interlock Driving Permit, both entered by the District Court of the First Circuit, and remand for further proceedings consistent with this opinion.

DATED:  Honolulu, Hawai'i, March 30, 2021.


On the briefs:                          /s/ Katherine G. Leonard
                                        Presiding Judge
Timothy I. Mac Master
for Defendant-Appellant                 /s/ Keith K. Hiraoka
                                        Associate Judge
Chad Kumagai
Deputy Prosecuting Attorney             /s/ Karen T. Nakasone
City and County of Honolulu             Associate Judge
for Plaintiff-Appellee