**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000334
29-JUN-2022
07:48 AM
Dkt. 87 SO**

NO. CAAP-21-0000334

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
HUGO HEMA, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1CPC-19-0000171)


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

Defendant-Appellant Hugo Hema (**Hema**) appeals from the April 21, 2021 Judgment of Conviction and Sentence (**Judgment**), entered by the Circuit Court of the First Circuit (**Circuit Court**).[1] Hema was charged with Terroristic Threatening in the First Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-716(1)(e) (2014),[2] stemming from events that occurred on or

---

[1]     The Honorable Catherine H. Remigio presided.

[2]     HRS § 707-716(1)(e) provides:

> **§ 707-716  Terroristic threatening in the first degree.**  (1) A person commits the offense of terroristic
>                                                   (continued...)

about January 7, 2019.  After a jury verdict finding Hema guilty as charged, the Circuit Court sentenced Hema to a term of imprisonment of five years with credit for time served.

Hema raises five points of error on appeal, contending that:  (1) the Circuit Court violated Hema's Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 48 and constitutional speedy trial rights where the court allowed more than a two-year delay before Hema's trial, citing the COVID-19 pandemic; (2) the Circuit Court erred by accepting Hema's waiver of his testimonial rights because Hema clearly did not understand, or misapprehended, the rights he was giving up; (3) Hema's right to a fair sentence was

---

[2](...continued)
threatening in the first degree if the person commits terroristic threatening:

. . . .

    (e)   With the use of a dangerous instrument or a simulated firearm.  For purposes of this section, "simulated firearm" means any object that:
    (i)   Substantially resembles a firearm;
    (ii)  Can reasonably be perceived to be a firearm; or
    (iii) Is used or brandished as a firearm[.]

The definition of terroristic threatening is set out in HRS § 707-715 (2014) as follows:

**§ 707-715  Terroristic threatening, defined**.  A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person or serious damage or harm to property, including the pets or livestock, of another or to commit a felony:
    (1)   With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person; or
    (2)   With intent to cause, or in reckless disregard of the risk of causing evacuation of a building, place of assembly, or facility of public transportation.

violated because he was not provided information or documents upon which the preparer of the pre-sentence investigation (**PSI**) report relied in making a sentencing recommendation to the judge; (4) Hema's right to a fair sentence was violated where the Circuit Court sentenced Hema based upon his status as a homeless person and alleged substance abuse and mental health concerns for which there was no competent evidence; and (5) the Circuit Court erred by denying Hema's motion for judgment of acquittal and by entering a Judgment against Hema despite there being insufficient evidence presented to support the conviction.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Hema's points of error as follows:

(1)  Hema's HRPP Rule 48 and constitutional speedy trial rights argument is grounded in his contention that the 163-day delay, classified by the Circuit Court as excludable due to the COVID-19 pandemic, from July 27, 2020, until January 6, 2021, was not excludable.

"Under the sixth amendment to the United States Constitution and article I, section 14 of the Hawaiʻi Constitution, an accused is guaranteed the right to a speedy trial in all criminal prosecutions." State v. Lau, 78 Hawaiʻi 54, 62, 890 P.2d 291, 299 (1995).  The Hawaiʻi Supreme Court has held:

> Whether the Government has violated an accused's right to a speedy trial is determined by applying the four-part test articulated in Barker v. Wingo, 407 U.S. 514, [92 S.Ct. 2182, 33 L.Ed.2d 101] (1972), and adopted by this court in State v. Almeida, 54 Haw. 443, 509 P.2d 549 (1973), to the particular facts in each case. The four factors to be considered in determining whether dismissal is warranted are: (1) length of the delay; (2) reasons for the delay; (3) defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant. Barker, supra [407 U.S.] at 530 [, 92 S.Ct. at 2192]. Because the right to speedy trial, unlike other rights guaranteed by the [United States and Hawaiʻi] Constitution[s], is unusually amorphous and serves to protect the separate, often conflicting interests of the accused and of the public in the speedy disposition of cases, the weight accorded each of these factors is to be determined on an *ad hoc* basis. "None of these four factors is to be regarded 'as either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial,' but rather 'they are related factors and must be considered together with such circumstances as may be relevant.'" State v. English, 61 Haw. 12, 16 n.6, 594 P.2d 1069, 1072–73 n.6 [(1979)], quoting Barker, supra [407 U.S.] at 533 [, 92 S.Ct. at 2192].

Id. at 62, 890 P.2d at 299 (quoting State v. Wasson, 76 Hawaiʻi 415, 419, 879 P.2d 520, 524 (1994)).

HRPP Rule 48 states Hawaii's speedy trial rule and generally requires that a trial be commenced within six months "from the date of arrest if bail is set or from the filing of the charge[.]" HRPP Rule 48(b)(1); State v. Alkire, 148 Hawaiʻi 73, 86, 468 P.3d 87, 100 (2020) ("[m]any states have such speedy trial rules, and HRPP Rule 48 is our version of a rule so prescribed"). HRPP Rule 48 provides, in relevant part:

> **Rule 48. DISMISSAL**.
>
> . . . .
>
> **(b) By court.** Except in the case of traffic offenses that are not punishable by imprisonment, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months:
>
> (1) from the date of arrest if bail is set or from the filing of the charge, whichever is sooner, on any

offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made; or

(2)  from the date of re-arrest or re-filing of the charge, in cases where an initial charge was dismissed upon motion of the defendant; or

. . . .

**(c)  Excluded periods.**  The following periods shall be excluded in computing the time for trial commencement:

(1)  periods that delay the commencement of trial and are caused by collateral or other proceedings concerning the defendant, including but not limited to penal irresponsibility examinations and periods during which the defendant is incompetent to stand trial, pretrial motions, interlocutory appeals and trials of other charges;

(2)  periods that delay the commencement of trial and are caused by congestion of the trial docket when the congestion is attributable to exceptional circumstances;

(3)  periods that delay the commencement of trial and are caused by a continuance granted at the request or with the consent of the defendant or defendant's counsel;

(4)  periods that delay the commencement of trial and are caused by a continuance granted at the request of the prosecutor if:

(i)  the continuance is granted because of the unavailability of evidence material to the prosecution's case, when the prosecutor has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date; or

(ii)  the continuance is granted to allow the prosecutor additional time to prepare the prosecutor's case and additional time is justified because of the exceptional circumstances of the case;

(5)  periods that delay the commencement of trial and are caused by the absence or unavailability of the defendant;

(6)  the period between a dismissal of the charge by the prosecutor to the time of arrest or filing of a new charge, whichever is sooner, for the same offense or an offense required to be joined with that offense;

(7)  a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance; and

(8)  other periods of delay for good cause.

"Determining whether the HRPP Rule 48 period has run . . . involves a two-step process:  first, ascertaining the date on which the clock started to run under HRPP Rule 48(b)(1); and second, calculating any excludable periods under HRPP Rule 48(c)."  State v. Cenido, 89 Hawaiʻi 331, 334, 973 P.2d 112, 115 (App. 1999).  Hema contends that the Circuit Court plainly erred with respect to the second step, when it excluded 163 days due to the pandemic.

Hema acknowledges that "several other jurisdictions have faced similar questions and have found that such delays due to the pandemic are excludable."[3]  Nonetheless, Hema argues, *inter alia*, that the pandemic had already been of consequence in Hawaiʻi for roughly five months; in-person hearings had resumed on Oʻahu by July 2020; the pandemic was worse by the time Hema's trial occurred; and it "defie[d] all logic that it took our judiciary the better part of all of 2020 to come up with this basic fix, and, the fact that it took our judiciary nine months to come up with this process renders the delay not excludable and thereby confirms that [Hema's] constitutional and statutory rights were violated."

---

[3]  See, e.g., State ex rel. Porter v. Farrell, 858 S.E.2d 897, 908 (W. Va. 2021) (excluding the term during which a judicial emergency had been declared due to COVID-19 from the speedy trial timing calculation); State v. Brown, 964 N.W.2d 682, 692-93 (Neb. 2021) (finding trial court's continuances based on COVID-19 were for good cause and did not violate constitutional rights to speedy trial); Hernandez-Valenzuela v. Superior Court, 291 Cal. Rptr. 3d 154, 168 (Cal. Ct. App. 2022) (noting even when courts reopened they were unable to operate at usual capacity due to pandemic restrictions constituting good cause for delay).

As noted by the State, the Chief Justice of the Hawaiʻi Supreme Court (**Chief Justice**) issued an Order Regarding Trials on April 17, 2020, postponing all civil, criminal, and family court trials due to the COVID-19 pandemic.  See Order Regarding Trials, In the Matter of the Judiciary's Response to the COVID-19 Outbreak, SCMF-20-0000152 at 2 (April 17, 2020).  The Chief Justice issued additional orders regarding jury trials, including on May 22, 2020; June 23, 2020; August 5, 2020; September 4, 2020; and September 28, 2020.  The September 28, 2020 Order Regarding Jury Trials postponed all jury trials in the First Circuit "to dates after December 11, 2020, unless otherwise ordered" and provided that "[t]he First Circuit may resume conducting jury trials beginning on December 14, 2020."  See Order Regarding Jury Trials, In the Matter of the Judiciary's Response to the COVID-19 Outbreak, SCMF-20-0000152 at 3 (Sept. 28, 2020) (emphasis added).  Thus, the First Circuit was unable to conduct jury trials from April 17, 2020, through December 14, 2020.

Hema's trial was set to begin on December 21, 2020, but was then postponed due to Hema being transported by a sheriff who tested positive for COVID-19, and therefore, it was determined that Hema had close contact with a person that had tested positive for COVID-19 and could not enter the courthouse.  The trial call and jury pre-selection was reset to January 6, 2021,

7

with jury selection and trial to begin on January 14, 2021. Hema's trial commenced accordingly.

Based on the extraordinary circumstances of the COVID-19 pandemic, the postponement of jury trials in Hawaiʻi, and Hema's close contact with a person who tested positive for COVID-19, we conclude that the 163 days from July 27, 2020, to January 6, 2021, were excludable for good cause under HRPP Rule 48(c)(8), and the Circuit Court did not plainly err in failing to *sua sponte* dismiss the charge against Hema. Hema makes no separate arguments concerning his constitutional speedy trial rights, and we conclude that the Circuit Court did not plainly err in failing to *sua sponte* dismiss the charge against Hema on such constitutional grounds.

(2) Hema contends that the Circuit Court erred when it accepted Hema's waiver of his right to testify because his responses to the Circuit Court's colloquy questions show that Hema did not fully understand what rights he was waiving.

It is well-established that "trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify." Tachibana v. State, 79 Hawaiʻi 226, 236, 900 P.2d 1293, 1303 (1995). This requires a trial court to advise a defendant, *inter alia*: "(1) that they have a right to testify, (2) that if they want to testify, no one can prevent them from doing so, and (3) that if they testify, the prosecution

will be allowed to cross-examine them." State v. Martin, 146 Hawaiʻi 365, 378, 463 P.3d 1022, 1035 (2020) (footnote omitted) (citing Tachibana, 79 Hawaiʻi at 226 n.7, 900 P.2d at 1303 n.7).

The trial court must "engag[e] in a true 'colloquy' with the defendant." State v. Celestine, 142 Hawaiʻi 165, 170, 415 P.3d 907, 912 (2018) (quoting State v. Han, 130 Hawaiʻi 83, 90-91, 306 P.3d 128, 135-36 (2013)). The supreme court has explained that "[t]his portion of the colloquy consists of a verbal exchange between the judge and the defendant 'in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights.'" Id. (citations omitted). Thus, to accomplish a "true colloquy," the supreme court has "suggested that the trial court engage in a verbal exchange with the defendant at least twice during the colloquy in order to ascertain the defendant's 'understanding of significant propositions in the advisement.'" Id. Accordingly,

> [t]he first time is after the court informs the defendant of the right to testify and of the right not to testify and the protections associated with these rights. The purpose of this exchange is for the court to ascertain the defendant's understanding of these important principles.
>
> The second time we suggested a verbal exchange should occur is after the court indicates to the defendant its understanding that the defendant does not intend to testify. This inquiry enables the court to determine whether the defendant's decision to not testify is made with an understanding of the principles that have been explained to the defendant. As part of this inquiry, the trial court elicits responses as to whether the defendant intends to not testify, whether anyone is forcing the defendant not to testify, and whether the decision to not testify is the defendant's.

Id. at 170-71, 415 P.3d 912-13 (internal citations and footnotes omitted). As such, "[a] defendant's right to testify is violated

when the colloquy does not establish an objective basis for finding that the defendant knowingly, intelligently, and voluntarily gave up their right to testify." Martin, 146 Hawaiʻi at 379, 463 P.3d at 1036 (internal brackets and quotations omitted) (quoting Han, 130 Hawaiʻi at 91, 306 P.3d at 136). "Courts look to the totality of the facts and circumstances to determine whether a waiver of the right to testify was voluntarily and intelligently made." Id. (citation omitted). Generally, "salient facts, such as mental illness or language barriers, require that a court effectively engage the defendant in a dialogue that will effectuate the rationale behind the colloquy and the on-the-record waiver requirements." Id. at 380, 463 P.3d at 1037 (internal brackets and quotations omitted).

Hema focuses on the following portion of the Circuit Court's ultimate colloquy to argue that Hema did not understand his rights or waiver of his right to testify:

> THE COURT: Has anyone put any pressure on you, made any kind of threats or made any promises to get you to say you don't intend to testify, but that you really want to testify?
>
> [HEMA]: No. It was my decision and my decision alone, and if I had to testify, I will testify, but if not, then I will remain silent.
>
> THE COURT: Well, I guess, you don't have to testify.
>
> [HEMA]: That's right, and it was my choice not to testify, I should waive that.
>
> THE COURT: Okay.
>
> [HEMA]: But if I must testify, I will.
>
> THE COURT: But that decision as to wether you must testify is between you, your decision --

[HEMA]:  Yes.

THE COURT:  <u>That's a decision subject to different opinions; right?</u>

[HEMA]:  Yeah.

THE COURT:  So you understand that the Court is not saying you must testify.

[HEMA]:  Yes.

THE COURT:  So when you say, If I must testify, I will, you're talking about some decision that you have made with the assistance of your attorney?

[HEMA]:  Yes, yes.  It's just, um, my personal opinion about what's happening here.

THE COURT:  Okay, you don't have to say anything further.

[HEMA]:  Okay.

THE COURT:  I just want to make sure that you understand.

[HEMA]:  Yes, yes.

THE COURT:  Do you want to testify?

[HEMA]:  I will waive.

(Emphasis added).

Hema argues that this portion of the colloquy reflects his lack of understanding.  However, Hema reiterated multiple times that he did not want to testify and intended to waive that right.  While there may have been some ambiguity when Hema stated "if I had to testify, I will testify, but if not, then I will remain silent," the Circuit Court sought further clarification. The Circuit Court then reiterated that it wanted to ensure that Hema understood, and again asked him if he wanted to testify, and Hema responded "I will waive."  Thus, we conclude that the record reflects that Hema knowingly, intelligently, and voluntarily waived his right to testify.

11

(3 & 4)   Hema contends that his right to a fair sentence was violated when he was not provided information/documents used by the preparer of the PSI report.  Specifically, Hema points to the PSI report referencing the National Crime Information Center (**NCIC**) report, which was purportedly not provided to Hema.  Hema acknowledges that he did not raise the PSI/NCIC issue below.  Hema further argues that his right to a fair sentence was violated because the Circuit Court's sentence was based on:  (1) his status as a homeless person; (2) an alleged and non-existent drug problem, based solely on drug charges he had received 15-20 years prior; and (3) an alleged and non-existent mental-health problem.

In State v. Kong, the appellant similarly argued that the lower court erred when it based its sentencing on, *inter alia*, fifteen-year-old crimes contained in the PSI report.  131 Hawaiʻi 94, 104, 315 P.3d 720, 730 (2013).  Kong did not raise the issue below, and the supreme court declined to utilize plain error review in addressing an "alleged inaccuracy in [a] PSI report" because the record indicated that "the circuit court based its imposition of a consecutive sentence on [appellant]'s 'extensive' criminal record as a whole and not solely on the specific convictions that [the appellant] alleges are invalid." Id. at 107, 315 P.3d at 733.  The supreme court further reasoned that Kong was given ample time to review the PSI report, and he failed to provide a good faith challenge on the record stating

the bases for challenging certain aspects of the PSI report, which he then sought to raise on appeal. Id. The supreme court concluded, *inter alia*, that it should not utilize plain error review to address the issue. Id.

Here, we similarly decline to conclude there was plain error based on Hema's contention regarding the NCIC report. First, as stated above, Hema did not raise the issue in the Circuit Court. Second, the PSI report outlined the assessment factors for sentencing, including the assessment that he had substance abuse and/or alcohol problems based on collateral information in the NCIC, and it clearly identified the information relied on. Hema declined to provide information regarding any prior illicit drug use, but the PSI report noted that according to NCIC, Hema had prior drug-related arrests for which he received a term of diversion. Third, Hema did dispute other aspects of the PSI report, indicating that he had ample time to review it, including the substance abuse and alcohol abuse factor for sentencing. However, Hema at no point argued that the NCIC report should be disclosed. Lastly, while the Circuit Court properly considered the PSI report, the record as a whole establishes that the Circuit Court did not impose its sentence on Hema based solely on the NCIC report. Instead, the Circuit Court considered, *inter alia*, Hema's prior convictions as outlined in the PSI report, his character and attitude, and mental health concerns. Therefore, it cannot be said that Hema's

13

substantial rights were affected by the Circuit Court's consideration of the NCIC data contained in the PSI report. See Kong, 131 Hawaiʻi at 107, 315 P.3d at 733.

Hema further argues that the Circuit Court abused its discretion in sentencing Hema "to the harshest sentence available based almost solely on 1) [Hema]'s status as a homeless person, 2) an alleged and non-existent drug problem, based solely on drug charges he had received 15-20 years prior, and 3) an alleged and non-existent mental-health problem where the court was concerned that [Hema] did not provide mental-health consent forms to the pre-sentence officer."

"[A]bsent clear evidence to the contrary, it is presumed that a sentencing court will have considered all factors before imposing concurrent or consecutive terms of imprisonment under HRS § 706-606 [2014]." Kong, 131 Hawaiʻi at 102, 315 P.3d at 728 (quoting State v. Hussein, 122 Hawaiʻi 495, 503, 229 P.3d 313, 321 (2010)). A "sentencing court 'is not required to articulate and explain its conclusions with respect to every factor listed in HRS § 706-606.'" Lewi v. State, 145 Hawaiʻi 333, 350, 452 P.3d 330, 347 (2019) (citation and footnote omitted).

HRS § 706-606 (2014) provides:

> **§ 706-606  Factors to be considered in imposing a sentence.** The court, in determining the particular sentence to be imposed, shall consider:
> (1)   The nature and circumstances of the offense and the history and characteristics of the defendant;

14

(2)    The need for the sentence imposed:
    (a)    To reflect the seriousness of the offense,
        to promote respect for law, and to provide
        just punishment for the offense;
    (b)    To afford adequate deterrence to criminal
        conduct;
    (c)    To protect the public from further crimes
        of the defendant; and
    (d)    To provide the defendant with needed
        educational or vocational training,
        medical care, or other correctional
        treatment in the most effective manner;
(3)    The kinds of sentences available; and
(4)    The need to avoid unwarranted sentence
    disparities among defendants with similar
    records who have been found guilty of similar
    conduct.

Hema argues that the Circuit Court abused its discretion in taking issue with Hema's refusal to sign consent forms to release records that were over fifteen years old pertaining to counseling and sentencing Hema based upon his right "to keep very old matters private." However, the Circuit Court expressly stated that while the mental health concerns were part of it, the primary concern of the Circuit Court was Hema's "attitude of I'm right and I'm gonna do it again." The Circuit Court noted that Hema refused to provide much of any information, not just information on his mental health, except that he disagreed with the jury's verdict, that he was in the right, and that he "intend[ed] to continue on the way that [he] had before this case occurred." The Circuit Court found this sparse information concerning.

Hema also contends that the Circuit Court abused its discretion in considering his attitude, that the issue was likely to reoccur, and his previous time in jail. These arguments are without merit. As provided in HRS § 706-606, the sentencing

15

court must consider "[t]he nature and circumstances of the offense and the history and characteristics of the defendant." In determining whether probation was appropriate under HRS § 706-621 (2014) factors, the Circuit Court stated:

> The factors that I need to dis -- determine whether probation is a -- applicable in this case, 706-621, I have to find -- I have to look at whether [HEMA]'s conduct caused or threatened serious harm, and by the nature of the offense it did.
>
> Whether [HEMA] acted under strong provocation. According to the jury he did not. And the jury disregarded the possibility that [HEMA] acted in some kind of self-defense.
>
> Whether there was substantial grounds tending to excuse or justify the conduct. There were not.
>
> Whether the victim induced or facilitated its commission. Again, the jury did not find that to be the case.
>
> Whether [HEMA] has a history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime. The last time [HEMA] was in trouble was I believe that theft case, in California, and that case occurred in 2006, a theft in the fourth degree. In that case he did not show up for a proof of compliant and the -- compliance, a bench warrant was served. No further action on the contempt of court because they lost jurisdiction based on the time that passed. But that was 14 years ago.

The Circuit Court also considered the HRS § 706-606 factors at sentencing, stating:

> THE COURT: 706-606 factors to be considered in imposing a sentence. First, the nature and sub -- and circumstances of the offense, history and characteristics of the defendant. So I think we -- [HEMA] and I have got through that already. The need for the sentence imposed, A, to reflect the seriousness of the offense, to promote respect for the law, provide just punishment for the offense; B, to afford adequate deterrence to criminal conduct; C, to protect the public from further crimes of the defendant; and, D, to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. And, finally, the kinds of sentences available and the need to avoid unwarranted sentence disparities.

> The court is left -- and I -- I have to say this, unfortunately, because this is not what I wanted to do today -- with an in -- there's no way that I can -- I can justify placing Mr. Hema on probation.  Therefore the court is gonna order Mr. Hema to be sentenced as follows:
>
> . . . .
>
> All right.  Mr. Hema, the final judgment and sentence of this court is that you be committed to the custody of the Department of Public Safety for a term of five years with credit for time served[.]

A trial court retains broad discretion in sentencing a defendant, and here, the Circuit Court properly evaluated the factors in HRS § 706-621 and HRS § 706-606.  We conclude that the Circuit Court did not abuse its discretion in sentencing Hema.

(5)  Hema argues that the Circuit Court erred in denying Hema's motion for judgment of acquittal because the prosecution failed to present sufficient evidence to sustain the charge.  Hema contends that "the facts do not show that the threat was so 'clear, unconditional, immediate, and specific' as to communicate a seriousness of purpose and an imminent likelihood, and, neither do the facts show that the threat was so 'clear, unconditional, immediate, and specific' as to show that [Hema] possessed the apparent ability to carry out the threat."  Hema points to the testimony of complaining witness Melandrew Taban (**Taban**) and witness Michael White (**White**), providing that Hema "was at no point in time closer than six feet" from Taban and that Hema backed away from Taban.  Hema essentially argues that although Taban may have felt scared when Hema pulled out a knife about ten inches long from the front of his pants, there was no true threat because of Hema's distance from Taban and

17

Hema's conduct of moving away from Taban. The State argues, in light of all of the circumstances evidenced by the trial testimony, there was sufficient evidence to support a finding that when Hema displayed the knife to Taban, it constituted a "true threat" of bodily injury to Taban.

In State v. Valdivia, 95 Hawaiʻi 465, 24 P.3d 661 (2001), the supreme court addressed a similar argument. The defendant in Valdivia was also charged with terroristic threatening in the first degree. Id. at 470, 24 P.3d at 667. The supreme court noted that for such terroristic threatening charges, "the prosecution must prove beyond a reasonable doubt that the alleged threat was objectively capable of inducing a reasonable fear of bodily injury in the person at whom the threat was directed and who was aware of the circumstances under which the remarks were uttered." Id. at 476, 24 P.3d at 672. The prosecution must also prove beyond a reasonable doubt, "the 'true threat' was 'so unequivocal, unconditional, immediate[,] and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution.'" Id. (citation omitted).

The defendant in Valdivia had "been pepper sprayed, arrested, handcuffed, and transported to a hospital" after dragging a police officer from a vehicle. Id. at 476, 24 P.3d at 672. While at the hospital, the defendant, who was seated and handcuffed with his hands behind his back, told a police officer

that he was "gonna kill [him]." Id. On appeal, Valdivia argued – like Hema – that a person of reasonable caution could not conclude that his remarks to the police officer were so "unequivocal, unconditional, immediate[,] and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution," and thus, they did not constitute a "true threat." Id. at 474, 24 P.3d at 670. Also similar to Hema's argument, the crux of Valdivia's argument was that there was "no realistic prospect [he] would imminently execute the literal words of his [remark] or that he had the ability to do so." Id. The supreme court rejected this argument, explaining that the defendant's argument, "i.e., that because the prosecution's evidence did not establish that there was a possibility that the evil [the defendant] threatened (literally killing [a police officer]) would be accomplished without temporal delay, he therefore cannot be guilty of terroristic threatening - is flawed." Id.

Instead, the supreme court held that the prosecution adduced substantial evidence and that the defendant did utter a "true threat" even though he was handcuffed and seated while making the threat, noting that the defendant had already resisted pepper spray and it took four police officers to physically apprehend him. Id. at 477, 24 P.3d at 673. Thus, the supreme court explained that a jury could find the defendant "possessed

19

the apparent ability to carry out his threat and that the threat would reasonably tend to induce fear of bodily injury." Id.

Based on the rationale articulated in Valdivia, we conclude that the State adduced substantial evidence from which a person of reasonable caution could conclude that Hema's threat, by word or conduct, was "clear, unconditional, immediate, and specific." Hema makes the same sort of flawed argument as the defendant in Valdivia, *i.e.*, that because Hema was "at no point in time closer than six feet from Taban" and that Hema was backing away with his knife drawn, that the threat was not "clear, unconditional, immediate, and specific." Taban testified that he confronted Hema while Hema was digging through a dumpster, that Hema got mad and cursed at Taban, then Hema pulled out a knife from the front of his pants and raised it up over his head, and Taban felt scared. White testified that Hema stated "I'm tired of this fucking shit" and that as he backed away from Taban, he pulled out a knife. Although Hema stood between six and ten feet from Taban, a jury could find, *inter alia*, that Hema possessed the apparent ability to carry out his threat and constituted a true threat of bodily injury. See Valdivia, 95 Hawaiʻi at 477, 24 P.3d at 673. Accordingly, we conclude that the Circuit Court did not err in denying Hema's motion for judgment of acquittal.

For these reasons, the Circuit Court's April 21, 2021 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, June 29, 2022.

On the briefs:

Kai Lawrence,
(Kai Law),
for Defendant-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge